## J. FRANK FRASER AND ANOTHER v. FARMERS CO-OPERATIVE COMPANY OF READING AND OTHERS.[1]

March 1, 1929.

No. 27,219.

*John F. Flynn,* for appellants.
*E. H. Nicholas,* for respondents.

STONE, J.

Defendants appeal from an order sustaining a general demurrer to their answer.

The plaintiff copartnership is a judgment creditor of defendant Farmers Co-operative Company and sues for the cancelation of a chattel mortgage given by that company to its directors on July 10, 1924. Defendants, other than the company, are the survivors of those directors and the heirs of one lately deceased. The mortgage seems to have covered all of the property of the mortgagor. The complaint charges that when the mortgage was given the mortgagor was insolvent and that the directors were conspiring to hinder, delay and defraud the creditors of the mortgagor. The answer denies fraud and insolvency and seeks to justify the mortgage by allegations to the following effect: February 20, 1923, the mortgagor

[1]Reported in 223 N. W. 785.

"became indebted" to the Citizens National Bank of Worthington "on account of money borrowed from said bank" by the mortgagor on its notes in the sum of $23,000. To secure its notes the Farmers Co-operative Company gave the bank two chattel mortgages upon all of its property, the same being that covered by the later mortgage to its directors and now under attack. As further security the directors "signed said notes as sureties thereon and thereby guaranteed the payment thereof on their due dates." The mortgagor paid but $2,000 of the mortgage, and on or about February 10, 1924, "said sureties were called on to pay and then and there did pay" the balance of the debt, then amounting to $21,000.

The answer then avers "that on account of the payment of said note by the * * * directors as such sureties they became entitled to the [be] subrogated to the rights of said bank as creditor, and to receive the benefit" of the security held by it against the debtor and "were thereby subrogated to the rights of said bank under said mortgages." This allegation is followed by one to the effect that on February 19, 1924, an officer of the bank "without the knowledge or consent of the defendants or either of them, by mutual mistake and inadvertence, released" the chattel mortgages to the bank. It is then averred that the bank, having become insolvent, was closed on June 14, 1924, and that defendants, discovering in the early part of July, 1924, that the mortgages given to the bank to secure its loan to the Farmers Co-operative Company had been released, the chattel mortgage now questioned by plaintiffs was authorized by appropriate corporate action and duly executed and delivered to the defendant directors "to take the place of the mortgage paid by them to said bank and wrongfully released."

It requires no liberality of construction to reach the conclusion from the answer that the directors who on February 20, 1923, signed the note to the bank did so as sureties or guarantors. Their right to subrogation, if their subsequent payment of the debt gave them the right to invoke that equity, attached retroactively as of that moment. Barrett Bros. Co. v. County of St. Louis, 165 Minn. 158, 206 N. W. 49. That the equity of subrogation, whether in-

voked or not, at one time existed is beyond doubt if the answer be true.

The bare allegation that because of the payment by "defendant directors as such sureties they became entitled to be subrogated to the rights" of the bank as creditor is of course a conclusion of law, but it does not stand alone. It is preceded by the allegation of the guaranty and the subsequent payment by the guarantors. There follows the allegation that without their knowledge or consent the mortgages to the bank were released and that upon the discovery of that release the new mortgage was executed simply to take their place.

The case does not come within the rule of Taylor v. Mitchell, 80 Minn. 492, 83 N. W. 418, to the effect that when a corporation is insolvent its directors who are also its creditors cannot, by taking advantage of their position, secure to themselves a preference over other creditors. Whether the corporation was then solvent or insolvent, there was nothing objectionable, so far as the pleadings disclose, in the guaranty of the $23,000 loan of February 20, 1923. It does not appear whether that was a new loan or the renewal of an old one. And it makes no difference, for in either case, in the absence of bad faith, there was no reason why the directors should not become guarantors of the debt of their corporation and in doing so exact security for the liability so assumed by them. Minnesota L. & T. Co. v. Peteler Car Co. 132 Minn. 277, 156 N. W. 255; Marin v. Calmenson, 158 Minn. 282, 197 N. W. 262. But here the directors simply assumed the liability and acquired the incidental rights of the ordinary guarantor. The right of subrogation to all of the remedies and securities of the creditor thereby became theirs. Because their answer pleads sufficiently that the mortgage the annulment of which is sought by plaintiffs was nothing more than a good faith measure resorted to for the purpose of confirming an existing equity, we consider that it was error to sustain the general demurrer.

Order reversed.