THE FRENCH LUMBER CO., INC. & others, *vs.* COMMERCIAL REALTY & FINANCE CO., INC. & another.

Worcester.    December 3, 1963. — January 15, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Subrogation.    Security Interest.    Uniform Commercial Code.*

Where three security interests under the Uniform Commercial Code in the same automobile were successively given to three creditors by a debtor and successively recorded, the third security interest being for money lent to the debtor to pay off the first creditor in full without knowledge by the third creditor of the second security interest and without an assignment of the first security interest to the third creditor, and subsequently the automobile was repossessed and sold at public auction for a sum less than the amount so paid to the first creditor and less than the balance still owed to the third creditor after payments to him on account by the debtor, the third creditor was entitled in equity to be subrogated to the security interest and priority of the first creditor and to receive the entire proceeds of the sale of the automobile notwithstanding the existence of the third creditor's own security interest and the payments on account by the debtor to him.

BILL IN EQUITY filed in the Superior Court on October 14, 1960.

The suit was heard by *Lurie, J.*

*Gerald J. Helfenbein* for Commercial Realty & Finance Co., Inc.

*Gerald E. Norman,* for Associates Discount Corporation, submitted a brief.

No argument or brief for the plaintiffs.

SPALDING, J.    This bill in equity seeks to determine the ownership of certain funds derived from the sale of an automobile at a public auction.

The judge made findings of the material facts.    The findings and evidence establish these facts: On February 9, 1959, The French Lumber Co., Inc. (French), purchased a 1959 Cadillac automobile and financed this purchase through the Ware Trust Company (Ware).    French received $4,600

346 Mass. 716                                                717

French Lumber Co. Inc. v. Commercial Realty & Finance Co. Inc.

which together with a finance charge of $460 resulted in a total indebtedness by it to Ware in the amount of $5,060 which was to be repaid in twenty-three successive monthly instalments of $207 each. "French entered into a Uniform Commercial Code security agreement as security for its note," and this agreement was duly recorded.

On July 10, 1959, French pledged its existing equity in the Cadillac to the defendant Commercial Realty and Finance Co., Inc. (Commercial), as collateral security for funds advanced by Commercial. Commercial's security interest was duly recorded. The note to Commercial was in the sum of $8,040 and was payable in sixty monthly instalments of $134. In addition to the equity in the Cadillac this note was secured by a real estate mortgage, a chattel mortgage and assignments of life insurance. The note was signed by French, Arthur T. Winters and Charles W. Proctor.

French failed to make payments under its agreement with Ware and in the latter part of July, 1959, Ware turned over the French chattel mortgage and note to its attorney, Mr. Schlosstein, for the purpose of foreclosure. Arrangements to refinance the mortgage having come to naught, Mr. Schlosstein ordered repossession of the Cadillac on August 15, 1959. In September, 1959, Winters and Proctor on behalf of French conferred with Associates Discount Corporation (Associates) about refinancing the Cadillac then in Ware's possession. As a result of these negotiations Winters and Proctor entered into a security agreement with Associates, which was duly recorded, covering the refinancing of the Cadillac for the total amount of $5,022. Upon receiving a note in this amount signed by Winters and Proctor, Associates issued its check in the sum of $4,256 payable to Ware, Winters, and Proctor. This check was turned over by Winters to Mr. Schlosstein on September 4, 1959, and he made a notation on the French note that it was paid in full. Subsequently the Ware security agreement and discharge were sent to Associates. On the check given by Associates was a notation over the indorsements of Winters, Proctor, and Ware that it was in payment in full for the Cadillac.

On August 30, 1960, Associates repossessed the Cadillac because of defaults in payments. A public auction followed and the present controversy has to do with the ownership of the proceeds ($3,200) of the foreclosure sale. Commercial asserts that it is entitled to the proceeds. Associates asserts that it is subrogated to the rights of Ware and is therefore entitled to the proceeds. After finding the foregoing facts the judge concluded: "There was nothing to indicate that French, Winters or Proctor ever informed Associates that Commercial held any security interest in the Cadillac over and above the interest held by . . . [Ware]. I infer from the evidence that Associates had no knowledge of this situation. It is incredible that Associates would not have taken appropriate protective steps by way of an assignment from the bank. . . . If the assumption is made that Associates was negligent in failing to check the records, this negligent act will not necessarily bar Associates from obtaining the relief it seeks through subrogation. Such negligence was as to its own interests and did not affect prejudically the interests of Commercial. . . . There has been no change of position by Commercial. It is left exactly in the position it originally was in. It had a claim known by it to be subordinated to . . . [Ware]. . . . [Ware] was paid by Associates. If Associates had taken an assignment from . . . [Ware], Commercial would have had no cause for complaint."

The judge ordered the entry of a decree declaring that Associates is entitled to the $3,200 arising from the proceeds of the auction sale. From a decree accordingly Commercial appealed.

Commercial seeks to establish rights in the proceeds prior to the rights of Associates. That part of the Uniform Commercial Code (G. L. c. 106, § 9–312 [5] [a]), here pertinent, provides that the order of filing determines the order of priorities among conflicting interests in the same collateral. Under this provision the order of priorities would be: Ware, Commercial, and Associates. This establishes Commercial's priority over Associates unless Associates can establish a right to succeed to Ware's priority.

346 Mass. 716                                         719

French Lumber Co. Inc. *v.* Commercial Realty & Finance Co. Inc.

A security interest can be "assigned" to another creditor without loss of its priority even if no filing is made. G. L. c. 106, § 9–302 (2). Thus Ware could have made an assignment of its security interest to Associates, and Associates would then have acquired Ware's priority over Commercial. But no such assignment was made.

Associates could also acquire Ware's priority through the doctrine of subrogation. For cases analogous to the present where this doctrine has been applied, see *Hill* v. *Wiley,* 295 Mass. 396; *Worcester No. Sav. Inst.* v. *Farwell,* 292 Mass. 568; *Home Owners' Loan Corp.* v. *Baker,* 299 Mass. 158.

In *Home Owners' Loan Corp.* v. *Baker, supra,* where the doctrine of subrogation was discussed, it was said at pages 161–162, "The plaintiff, having paid the debts of the defendant out of its funds and taken its mortgage in the mistaken belief that it would have a first lien on the premises, was not officious. In such circumstances equity has given relief by way of subrogation when the interest of intervening lienors were not prejudicially affected."

The trial judge, having found that the conduct of Associates did not prejudice Commercial or cause it to change its position, was of opinion that the principle of the cases cited above was applicable and accorded Associates priority over Commercial. Commercial argues that Associates has elected to stand on its own later security interest and should have no rights to Ware's interest. We are of opinion that this argument lacks merit. Associates was seeking to collect its own claim. This was not inconsistent with its present claim for subrogation to Ware's rights.

The decisions on subrogation discussed above are not superseded by the Uniform Commercial Code. Section 1–103 of the Code provides in part, "Unless displaced by the particular provisions of this chapter, the principles of law and equity . . . shall supplement its provisions." No provision of the Code purports to affect the fundamental equitable doctrine of subrogation.

Commercial argues that even if Associates is entitled to subrogation its rights can rise no higher than Ware's.

This, of course, is true. *Home Owners' Loan Corp.* v. *Baker,* 299 Mass. 158, 162. The facts establish that Ware received $4,256 from Associates in payment of the balance due on French's debt to Ware. They also show that Associates received $1,297.50 in payments by French on its debt to Associates. Commercial argues that the $1,297.50 in payments made to Associates by French should be allocated as payment on the $4,256 balance owed to Ware at the time Associates paid off the debt to Ware. This could limit Associates' subrogation rights to $2,958.50. We do not agree. Associates had a right to enforce its own claim without displacing its right to subrogation to Ware's security. Associates is entitled to be subrogated to the full $3,200 of the proceeds.

Contrary to the contention of Commercial, the failure of French to disclose to Associates the existence of Commercial's security interest would have no effect on Associates' rights to subrogation.

The decrees are affirmed with costs of appeal.

*So ordered.*