**OTTENHEIMER PUBLISHERS, INC., Plaintiff-Appellant,**

v.

**REGAL PUBLISHERS, INC., Carl C. Crandall, George T. Laws, Norma L. Laws, William R. Goad, Elena R. Goad, Everette E. Gaddy, Delores Gaddy, Louis Shafer, Edith Shafer and James R. McKinney, Defendants-Appellees.**

Court of Appeals of Tennessee, Middle Section.

Oct. 6, 1981.

Permission to Appeal Denied by Supreme Court Dec. 14, 1981.

Stephen M. Miller, Denney, Lackey & Chernau, Nashville, for plaintiff-appellant.

James R. McKinney, McKinney & Everett, Madison, for defendants-appellees.

## OPINION

LEWIS, Judge.

Plaintiff Ottenheimer Publishers, Inc. sued defendant Regal Publishers, Inc. (Regal) and certain individual defendants and alleged that Regal was indebted to plaintiff as a result of Regal's default under the terms of a certain security agreement. Plaintiff alleged that the individual defendants were indebted to it as a result of "executing guaranty agreements for the purpose of enabling REGAL PUBLISHERS, INC. to obtain credit from the Bank of Goodlettsville." Plaintiff alleged that defendants Crandall and McKinney were indebted to it as a result of their personally guaranteeing "a promissory note executed by REGAL PUBLISHERS, INC. to secure the Bank of Goodlettsville."

After a bench trial the Chancellor entered judgment for plaintiff against Regal for the sum of $87,639.71 and dismissed the complaint against the individual defendants.

The pertinent facts are as follows: Plaintiff is engaged in the business of publishing books, primarily in the field of children's literature and education. Regal was engaged in the publication and sale of religious books.

Defendants William Goad, Elena R. Goad, George Laws, Norma Laws, Louis Shafer, Edith Shafer, Everette Gaddy and Delores Gaddy executed guaranty agreements for the purpose of enabling Regal to obtain credit from the Bank of Goodlettsville in an amount not to exceed $250,000. Defend-

ants Carl Crandall and James McKinney personally guaranteed promissory note number 6953. Some of the individual defendants heretofore named signed as accommodation endorsers on other promissory notes.

The initial extension of credit under the financing arrangement between Regal and the Bank was a $45,000 loan represented by a promissory note dated February 1, 1975, and payable on May 2, 1975. Thereafter, Regal would make payments of interest on the due date of any outstanding note and would renew the principal debt either by renewal of the existing note or by making a new note. Various individual defendants, at one time or another, signed as accommodation parties whenever an existing note was renewed or a new note was made.

Regal's total liability to the Bank on February 16, 1978, was $52,015.71 represented by two notes. Promissory note 6953 was for the principal amount of $30,000 with interest in the amount of $688.75, or a total of $30,688.75. Promissory note 11073 was in the principal sum of $21,000 with interest of $326.96, or a total of $21,326.96.

Because of Regal's financial condition, plaintiff and Regal, in the fall of 1976, entered into negotiations for plaintiff to become Regal's production arm. Plaintiff was to use its own credit and would be responsible for the paper, printing, binding and editing of Regal's published materials. In return, Regal was to pay plaintiff ten (10%) percent above its costs. Plaintiff was to retain a lien on Regal's receivables and inventory to the extent of credit extended by plaintiff on Regal's behalf. The terms of this agreement were set out in a letter of intent dated November 24, 1976.

On or about June 28, 1977, plaintiff entered into a security agreement with Regal, taking a security interest in Regal's inventory and accounts receivable. The security agreement had reference to the prior agreement between the parties dated November 24, 1976. The security agreement contained the parties' agreement that the lien secured thereby would be subordinate to "any existing security interests of the Bank of Good-lettsville." The agreement further provided that plaintiff, as the secured party, could exercise any one or more of the rights and remedies granted under the applicable provisions of Article IX of the Uniform Commercial Code.

Pursuant to the agreement, plaintiff extended trade credit to Regal in excess of $340,000. Regal failed to make payments owed to plaintiff as required by the agreement and plaintiff declared Regal in default under the terms of the June, 1977 security agreement.

On November 16, 1977, plaintiff proposed to extend the publishing agreement with Regal upon certain additional conditions which amounted to total assumption of control of Regal's business. Upon Regal's representation that the business was still viable, plaintiff permitted a continuance of the relationship under the existing terms and conditions.

On or about February 16, 1978, Regal was in default under the terms of the security agreement to the extent of credit extended in the amount of $310,000.

Plaintiff notified the Bank of Regal's default under its subordinate security agreement and informed the Bank of its intent to exercise its remedies as a subordinate lienholder. The Bank disputed plaintiff's right to take possession of the collateral without the intervention of court proceedings. Plaintiff thereafter negotiated an agreement with the Bank which would permit plaintiff to liquidate the collateral.

On February 16, 1978, plaintiff and the Bank entered into an agreement which recited the parties' intent to protect their respective interests in the inventory and provided that plaintiff was to immediately take possession of and liquidate the collateral. The agreement further provided that "the Bank and Ottenheimer shall share equally in the collected net account receivables to the extent of the indebtedness of Regal to the Bank, being the amount of Fifty Three Thousand One Hundred Twenty-Five and $^{54}/_{100}$ ($53,125.54)."

The agreement provided that upon payment of the balance the Bank was to "immediately assign and transfer to Ottenheimer all security held by said Bank, as well as all other evidence of indebtedness between Regal Publishers and the Bank to the extent of any indebtedness owed by Regal to Ottenheimer." This agreement was accepted and executed by Regal.

Upon performance of the February 16, 1978 agreement, the Bank assigned the promissory notes representing the consolidated balance of the account of Regal to plaintiff with the following endorsement:

For value received, we hereby assign the attached note dated _____, 19____, in the amount of $_____, between Bank of Goodlettsville and Regal Publishers, Inc., without recourse to Ottenheimer Publishers, Inc.

After liquidation of all collateral over which plaintiff assumed control in accordance with the February 16, 1978 agreement with the Bank and deduction of all appropriate expenses, there remained a deficiency balance due and owing under the security agreement between plaintiff and Regal in the amount of $87,639.71.

From February 1, 1975, and at all times material herein the Bank held a security interest in the inventory of accounts receivable of Regal perfected in accordance with the provisions of Article IX of the Uniform Commercial Code, T.C.A. § 47–9–302.

Plaintiff by its appeal seeks to reverse the judgment of the Chancellor in dismissing the complaint as to the individual defendants in their capacities as guarantors and/or accommodation endorsers.

We first discuss plaintiff's contention that a guarantor must affirmatively show that he did not consent to an agreement between two creditors of his principal which results in relinquishment of collateral in order to be discharged on the debt.

The surrender or release by a creditor without the consent of the guarantor of any security held at the time when the debt is guaranteed will operate to discharge the guarantor. 38 C.J.S. *Guaranty* § 81 (1943).

A necessary component of this rule is that the guarantor must not consent to the release of the collateral. Here, plaintiff argues that defendant guarantors offered no evidence that the agreement between plaintiff and the Bank was made without the consent or acquiescence of the guarantors. This, plaintiff insists, is tantamount to consent and thus precludes the guarantors discharge.

Rule 8.03, TRCP, requires any matter of avoidance to be pleaded specially. Plaintiff correctly argues that pleas setting up affirmative defenses impose the burden of proof as to such defenses. We do not agree that lack of consent is an affirmative defense.

Plaintiff cites *Hixson v. Stickley*, 493 S.W.2d 471 (Tenn.1973), in support of its contention that release is an affirmative defense and must be pleaded by answer. We agree. Rule 8.03 specifically states that "release" is a defense that must be specifically pleaded. Plaintiff also cites *W. R. Grace & Co. v. Taylor*, 55 Tenn.App. 227, 398 S.W.2d 81 (1965), in support of its contention. In *Grace*, the guarantors defended on the ground that there had been an abandonment of the guaranty. This Court held that the guarantors failed to establish the defense of abandonment. We find nothing in *Grace* touching on the proposition that lack of consent is an affirmative defense which must be pleaded and proved by the guarantors. *United States v. Hart*, 215 F.Supp. 35 (M.D.Tenn.1962), aff'd. 312 F.2d 127 (6th Cir. 1963), is also relied upon by plaintiff. In *Hart*, the guarantors' claim of bad faith on the part of the assignor Banks with the assignee was held to be an avoidance within the meaning of the affirmative defenses of the Federal Rules of Civil Procedure. The Court held in *Hart* that defendant did not carry the burden of proof with respect to showing bad faith. Again, we find nothing touching on the proposition that lack of consent is an affirmative defense. We are of the opinion that both *Grace* and *Hart* are inapposite to the facts in the case at bar.

Plaintiff also relies upon *Hart, supra,* for the contention that the guarantors may still be liable for the debt even if the collateral is released without their consent. In *Hart,* the government, which was subrogated to the rights of the creditor, was allowed to recover from the guarantors the full amount of the indebtedness less amounts realized from the sale of the collateral. In the instant case the entire amount which the guarantors had guaranteed was satisfied out of the collateral pledged by Regal. *Hart* is likewise inapposite on this point to the facts in the case at bar.

Plaintiff also contends that the burden of proof is on the accommodation endorsers to show lack of consent to an agreement which unjustifiably impairs the collateral. T.C.A. § 47–3–606(1)(b) provides:

> *Impairment of recourse or of collateral.* —(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder:
>
> . . . .
>
> (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

As there can be no consent if a common-law guarantor is to be discharged, there likewise must not be consent to the impairment of collateral for discharge of an accommodation party under the foregoing statute. Plaintiff correctly states that this consent is normally manifest in the note itself. *See Holmes v. Rushville Production Credit Association,* 170 Ind.App. 509, 353 N.E.2d 509, vacated 355 N.E.2d 417, reinstated 357 N.E.2d 734 (1976); *Greene v. Bank of Upson,* 231 Ga. 287, 201 S.E.2d 463 (1973).

However, in the instant case consent is not manifest in the note. Plaintiff argues that since defendants Gaddy and Crandall acknowledged the agreement between plaintiff and the Bank by executing the agreement in their capacity as officers of Regal, they are liable. Plaintiff seeks to hold these guarantors liable in their individual capacities for acts done by them in their capacity as officers of a corporation. Plain-

tiff fails to show how Gaddy and Crandall consented to an impairment of the collateral in their individual capacities to the extent that they would become personally liable.

We have found no authority for the contention that the burden of proof of establishing an absence of consent is on the individual defendants as guarantors or accommodation endorsers, and plaintiff has cited none.

Plaintiff next argues that the individual defendants have no lawful right to claim a credit with the Bank as a result of the liquidation of the collateral by plaintiff as the secured party. The disposition of collateral by the secured party is governed by the provisions of T.C.A. § 47–9–502 et seq. The secured party is allowed to sell, lease, or otherwise dispose of any or all of the collateral and the disposition "shall" be applied to (1) reasonable expenses incurred by the secured party, (2) satisfaction of the indebtedness, and (3) satisfaction of the indebtedness secured by any subordinate security in the collateral. *In Re Trans National Communications, Inc.,* 11 U.C.C.Rep. 238, 243 (S.D.N.Y.1972). One indication of the concern for the debtor's rights is the notice requirement of T.C.A. § 47–9–504(3). Numerous cases have construed the notice requirement imposed by Article IX of the UCC when the secured party is repossessing collateral and selling it to create funds for satisfaction of the debt. *See Mallicoat v. Volunteer Finance & Loan Corp.,* 57 Tenn. App. 106, 415 S.W.2d 347 (1966). While the debtor does not have a right to continued possession of collateral absent a provision in the security agreement, he does at least have the right to have the collateral disposed of in a manner which will satisfy the debt for which it was offered as security.

Plaintiff contends that defendants may not avoid liability on the basis of the disposition of other collateral subsequent to the agreement between plaintiff and the Bank, as holder and guaranty of the indebtedness, because plaintiff was subrogated to the Bank's rights as of the date of the agreement between plaintiff and the Bank. This

subrogation would become effective upon performance of the agreement.

Generally a surety or guarantor, by payment of the debt of his principal when he is obligated to make that payment, acquires an immediate right to be subrogated to the extent necessary to obtain reimbursement or contribution to all rights, remedies and securities which were available to the creditor to obtain payment from the person or property of any person who, as to the surety, is primarily liable for the debt. 83 C.J.S. *Subrogation* § 47 (1953). Plaintiff contends that its agreement to become a co-guarantor of Regal's account with the Bank constitutes an agreement to become secondarily liable for a debt for which plaintiff was not otherwise responsible and that when the debt was paid, plaintiff became subrogated to the rights of the Bank against the defendant guarantors. In support of this proposition, plaintiff cites *French Lumber Co. v. Commercial Realty & Finance Co.*, 346 Mass. 716, 195 N.E.2d 507 (1964). In that case a lumber company financed the purchase of an automobile through a trust company and later pledged the equity in the automobile to a finance company as security for a loan. The lumber company defaulted in its payments to the trust company and the trust company repossessed the automobile. The lumber company then entered into a new financing arrangement with a second finance company. By the terms of this agreement, the second finance company paid the note due the trust company which had originally financed the purchase of the automobile. The second finance company also took a security interest in the automobile. It was held that the second finance company was subrogated to the rights of the trust company and thus acquired the trust company's priority over the first finance company with respect to the security, the automobile.

The instant case is readily distinguishable from *French Lumber* in that plaintiff did not satisfy the debt Regal owed with its own funds. Plaintiff satisfied the debt through the liquidation of Regal's collateral. Here plaintiff is clearly not entitled to subrogation.

In the instant case it is without argument that if the individual guarantors and accommodation endorsers had been called upon to satisfy the indebtedness of Regal to the Bank, who was at that time the first lienholder, they would have been subrogated to the Bank's rights to the collateral for payment.

The performance of the agreement between the Bank and plaintiff and the assignment from the Bank to plaintiff changed the extent of the rights to which the individual defendants would be subrogated in the event they were called upon to satisfy Regal's indebtedness to plaintiff.

Performance of the agreement between the Bank and plaintiff satisfied the indebtedness of Regal to the Bank. The Bank marked the notes "satisfied" prior to delivering them to plaintiff. The indebtedness of Regal to the Bank was extinguished at the time the promissory notes and guaranty agreements were assigned to plaintiff by the Bank and at that time the obligation of the guarantors and accommodation endorsers was relieved.

We have considered each of the issues and contentions of plaintiff and find them to be without merit.

It results that the judgment of the Chancellor is affirmed with costs to plaintiff and the cause remanded to the Chancery Court for the collection of costs and any further necessary proceedings.

TODD, P. J., and CONNER, J., concur.