In re Russel H. BUKOWSKI and Sharon E. Bukowski, Debtors.

Wayne DREWES, as Trustee for the Bankruptcy Estate of Russel H. Bukowski and Sharon E. Bukowski, Plaintiff,

v.

UNITED STATES of America, acting Through FARMERS HOME ADMINISTRATION, Henry Bukowski and Joseph Bukowski, Defendants.

Bankruptcy No. 6–88–563.
Adv. No. 6–89–35.

United States Bankruptcy Court,
D. Minnesota.

Jan. 29, 1990.

Kip Kaler, Fargo, N.D., for trustee.

Kurt Marben, Thief River Falls, Minn., for debtors.

Roylene Champeaux, Asst. U.S. Atty., Minneapolis, Minn., for Farmers Home Admin.

## MEMORANDUM DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR SUMMARY JUDGMENT

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on January 9, 1990 on plaintiff's motion for summary judgment in its action to avoid, pursuant to 11 U.S.C. § 544(a), a lien claimed by defendants Henry and Joseph Bukowski. The appearances were as follows: Kip Kaler appeared for the trustee; Kurt Marben appeared by telephone for defendants Henry and Joseph Bukowski; and Roylene Champeaux appeared by telephone for defendant United States of America. This Court has jurisdiction to hear and finally determine this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 103. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). The following Memorandum Decision shall constitute the Court's Findings of Fact and Conclusions of Law.[1]

## UNDISPUTED FACTS

On May 4, 1984, Farmers Home Administration ("FmHA") made the filings required by the Uniform Commercial Code ("UCC") to perfect its blanket security interest in, *inter alia,* all equipment then owned or after acquired by Russel and Sharon Bukowski (the "debtors"), which interest secured a loan from FmHA to the debtors. On July 17, 1985, First National Bank of Middle River (the "Bank") made the necessary UCC filings to perfect its security interest in a farm tractor, which interest secured the Bank's loan to the debtors of funds advanced for purchase of the tractor. The Bank's loan was guaranteed by Henry and Joseph Bukowski (the "guarantors"). Both FmHA and the Bank made a number of subsequent UCC filings which did not affect the relative priority of their interests in the tractor.

On December 5, 1988, debtors filed their petition for relief under Chapter 7 of the Bankruptcy Code. By virtue of said filing, the tractor became property of the estate. Both FmHA and the Bank possessed perfected security interests in the tractor at the time the petition was filed. Said filing constituted a default on the Bank's loan.

On December 28, 1988, the guarantors made payment to the Bank for the entire balance of principal and interest outstanding on the loan they had guaranteed. Immediately thereafter, debtors transferred possession of the tractor to the guarantors. On June 6, 1989, without the guarantors' knowledge or consent, the Bank filed a statement terminating its security interest in the tractor.

## DISCUSSION

The trustee commenced this action on September 26, 1989 to compel turnover of the tractor and to avoid the guarantors' alleged lien thereon. The guarantors subsequently relinquished possession of the tractor to the trustee. Thus, all that remains to be decided is the purely legal issue of whether the guarantors possessed a valid lien on the tractor as of the time the petition was filed. If they did not, the trustee's "strong-arm" power entitles him to avoid the guarantors' interest. *See* 11 U.S.C. § 544(a).

The guarantors appear to proffer two distinct theories in support of their contention that they possessed a valid lien as of the time the petition was filed. Under the first theory, they assert that they acquired the Bank's security interest in the tractor upon full satisfaction of the debtors' outstanding debt by virtue of the equitable doctrine of subrogation. They further as-

---

1. The Court bases its Findings of Fact and Conclusions of Law upon the pleadings, affidavits and memoranda submitted in support of and opposition to this motion, and the argument of counsel presented at the motion hearing.

sert that they were not required to take additional action to perfect that security interest, or alternatively that they took the necessary action to perfect that interest. Under the second theory, the guarantors assert that they acquired a valid prepetition lien by virtue of the equitable doctrine of subrogation, and that the rights they acquired thereby are not subject to the provisions of Article 9 of the UCC.

Federal Rule of Civil Procedure 56(c), as incorporated by Bankruptcy Rule 7056, provides the requirements for granting a motion for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

The parties agree that their concurrence on all of the material facts renders this dispute ripe for summary judgment. I conclude that the trustee is entitled to judgment as a matter of law, and I therefore grant the trustee's motion for summary judgment.

■ The guarantors' first theory is without merit. Even if the guarantors have a valid security interest in the tractor, that interest was not perfected as of the filing of the bankruptcy petition, and therefore the trustee can avoid their interest. Filing is required to perfect a security interest, except as provided in Minn.Stat. § 336.9–302. The guarantors assert that they are entitled to continuation of the Bank's perfected security interest, and therefore they were not required to file to perfect their alleged security interest:

> If a secured party assigns a perfected security interest, no filing under this article is required in order to continue the perfected security interest against creditors of and transferee from the original debtor.

Minn.Stat. § 336.9–302(2). The Bank, however, did not assign its security interest to the guarantors.[2] Therefore, the guarantors were required to file to perfect their alleged security interest. They did not do so,[3] and consequently the trustee can avoid their alleged security interest. Minn.Stat. § 336.9–312(5); 11 U.S.C. § 544(a).

■ Alternatively, the guarantors assert that they perfected their alleged security interest by taking possession of the tractor. But the guarantors did not take possession until after the petition was filed. Any postpetition act to obtain possession of or to perfect a lien against property of the estate constitutes a violation of 11 U.S.C. § 362(a), and as such is voidable. Moreover, even if the guarantors could have perfected their alleged security interest by obtaining possession of the tractor prepetition, they did not do so until after the petition was filed.[4] Therefore, the trustee can avoid their alleged security interest. Minn.Stat. § 336.9–312(5); 11 U.S.C. § 544(a).

■ The guarantors' second theory, however, is more substantial. A guarantor who makes payment to a secured creditor and thereby acquires subrogation rights by operation of law has the same priority with respect to the perfected security interest as that of the secured creditor. *First Nat'l Bank v. Jefferson Sales & Distributors, Inc.*, 341 F.Supp. 659, 672 (S.D.Miss.1971), *aff'd*, 460 F.2d 1059 (5th Cir.1972). Subrogation rights, in contrast to security interests, are not the product of agreements

---

2. Subrogation works an equitable assignment of a debt and its securities. *Barrett Bros. Co. v. St. Louis County*, 165 Minn. 158, 161, 206 N.W. 49, 50 (1925). But the language of Minn.Stat. § 336.9–302(2) explicitly limits the statute's applicability to situations where the secured creditor actually "assigns" a perfected security interest, and thus equitable assignments are excluded from the statute's purview. *See French Lumber Co. v. Commercial Realty & Fin. Co.*, 346 Mass. 716, 719, 195 N.E.2d 507, 509 (1964).

3. It does not appear that the guarantors had a security interest in the tractor prepetition, which would explain their failure to file prepetition to perfect such an interest.

4. Again, the guarantors' failure to take possession prepetition can be attributed to their apparent lack of a security interest at that time.

between parties, but instead are purely equitable in origin and nature. *Northern Trust Co. v. Consolidated Elevator Co.,* 142 Minn. 132, 138, 171 N.W. 265, 268 (1919); *In re V. Pangori & Sons, Inc.,* 53 B.R. 711, 715 (Bkrtcy.E.D.Mich.1985). Moreover, the UCC recognizes that subrogation rights exist independent of its provisions:

> A person who is liable to a secured party under a *guaranty,* endorsement, repurchase agreement, or the like and who receives a transfer of collateral from the secured party or is *subrogated* to the secured party's rights has thereafter the rights and duties of the secured party.

Minn.Stat. § 336.9–504(5) (emphasis added). Thus, subrogation rights are not "security interests" subject to the provisions of Article 9 of the UCC. *In re V. Pangori & Sons, Inc.,* 53 B.R. at 717; *French Lumber Co.,* 346 Mass. at 719, 195 N.E.2d at 510. *See also* R. Hillman, *et al., Common Law and Equity under the Uniform Commercial Code* ¶ 24.01[2][a][i] (1985). *Contra United States ex rel. Greer v. G.P. Fleetwood & Co.,* 165 F.Supp. 723 (W.D.Pa. 1958); *Hartford Accident & Indemn. Co. v. Pa. Pub. School Bldg. Auth.,* 26 Pa.D. & C.2d 717 (C.P.1961). The interest the guarantors acquired by subrogation was not an Article 9 "security interest," and therefore their failure to perfect prepetition is irrelevant.

■ The relative priority of the guarantors' subrogation rights versus the trustee's position under 11 U.S.C. § 544(a) is controlled by Minnesota's common law of subrogation:

> Evaluation of property interests and security interests are matters of law, and the bankruptcy courts must therefore analyze the rights of the parties with reference to the laws applicable in that state.

*In re V. Pangori & Sons, Inc.,* 53 B.R. at 718. It is settled Minnesota law that subrogation rights relate back to the time of the agreement giving rise to those rights. *Barrett Bros. Co.,* 165 Minn. at 161, 206 N.W. at 50; *Fraser v. Farmers Coop. Co.,* 176 Minn. 516, 517, 223 N.W. 785, 785 (1929). In the instant case, that agreement

was the guaranty given prepetition by the guarantors to the Bank.

■ But it is also a general principle of law that where the principal assigns contract proceeds to a third party, any proceeds received by the assignee prior to default by the principal cannot be reached by a surety as subrogee under the relation-back doctrine. R. Hillman, *et al., supra,* ¶ 24.01[2][b][ii]. Similarly, if a judicial creditor has executed on its judgment prior to maturation of a subrogee's rights, the relation-back doctrine has been held inapplicable, in which case the subrogee cannot claim an interest in the collateral superior to that of the judicial creditor. *Earl Dubey & Sons, Inc. v. Macomb Contracting Corp.,* 97 Mich.App. 553, 559, 296 N.W.2d 582, 585 (1980). Subrogation rights do not mature until the subrogee has incurred an expense as a result of the principal's default. *Id.; New York Casualty Co. v. Sazenski,* 240 Minn. 202, 208, 60 N.W.2d 368, 373 (1953). Therefore, any security interests that attach to the collateral prior to the subrogee's incurring expenses as a result of the principal's default are superior to the subrogee's rights. *Earl Dubey & Sons, Inc.,* 97 Mich.App. at 558, 296 N.W.2d at 585.

I can find no Minnesota case directly deciding the relative priority of subrogation rights versus security interests or judicial liens that attached prior to maturation of the subrogation rights. The *Barrett Brothers* case, however, contains language that appears to support the subrogee's priority:

> [F]rom that moment [when the contract and surety bond were executed], the rights of the contracting parties, the builder and the county, were qualified insofar as they became subject to the surety's equity of subrogation. It follows that there was no part of the prospective earnings . . . which the contractor could assign . . . and thereby give[ ] the assignee a right superior to that of the surety.

*Barrett Bros. Co.,* 165 Minn. at 161, 206 N.W. at 50. But the relative priorities between pre-default liens and subrogation

rights was not at issue in *Barrett Brothers*, and therefore I cannot conclude that the above-quoted dicta indicates that Minnesota's law is contrary to the generally recognized rule that pre-default liens have priority over subrogation rights.

A guarantor's subrogation rights do not mature until the principal has defaulted and the creditor makes demand on the guarantor or the guarantor actually makes payment on behalf of the principal. *See Earl Dubey & Sons, Inc.*, 97 Mich.App. at 561, 296 N.W.2d at 586. In the instant case, default occurred when the petition was filed. But if the Bank made demand on the guarantors, it did not do so until after the petition was filed.[5] Moreover, it is undisputed that the guarantors did not make payment on the debtors' behalf until after the petition was filed. Therefore, the guarantors' subrogation rights cannot relate back to the prepetition time when they gave their guarantees. Consequently, the trustee is entitled to avoid their equitable lien. *In re V. Pangori & Sons, Inc.*, 53 B.R. at 721.

The guarantors urge the Court to follow the holding in the *French Lumber* case, which permitted a lender refinancing a first mortgage to be subrogated to the first mortgagee's priority over a second mortgagee, even though the refinancing lender took and recorded a new mortgage rather than obtaining an assignment of the first mortgage. *French Lumber Co.*, 346 Mass. at 719, 195 N.E.2d at 509. That holding is not applicable to the instant case, since the *French Lumber* court was addressing the subrogation rights of refinancing lenders, rather than those of sureties or guarantors:

> Where a person *lends* money to another ... for the discharge of a lien upon the property which the other represents as belonging to him and where the money so lent is used for the discharge of such lien, the lender is entitled to have the lien reinstated for his benefit if, unknown to him, the property ... was subject to a junior lien.

Restatement of Restitution § 43(3) (1937) (emphasis added). The policy of encouraging refinancing does not apply to the compelled payments of sureties or guarantors. *See* R. Hillman, *et al.*, *supra*, ¶ 24.01[1][b][ii]. Therefore, I cannot conclude that the holding in *French Lumber* supports the guarantors' position.

ACCORDINGLY, IT IS HEREBY ORDERED that the trustee shall have judgment avoiding the alleged interest of Henry and Joseph Bukowski in a 1979 855 Versatile 4X4 tractor.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

5. The record does not indicate whether such demand was made, but this factual issue is immaterial in light of the Court's legal conclusions.