Sweeney, J.
The plaintiff, First International Bank, seeks abindingdeclaration ofitsrights, duties, status, and other legal relations as they may pertain to the defendant, Continental Casualty Company, with respect to funds being held in escrow. Both parties assert priority rights to the escrowed funds. The plaintiff now moves for summary judgment. For the following reasons, the plaintiffs motion is denied.
1. Background
The summary judgment record reveals the following undisputed material facts viewed in the light most favorable to the defendant. Continental Casualty Company is a surety company that issues surety bonds, including labor and material payment bonds and performance bonds, to contractors. The bonds guarantee a construction project owner that in the event that the contractor fails to pay laborers, suppliers, or subcontractors, or if the contractor fails to *576 complete performance, the surely will make such payments and complete such performance for the benefit of the project owner.
In early 2000, T Equipment Corporation (T Equipment) was awarded contracts to perform work on several projects in the Commonwealth. Pursuant to state and federal laws, T Equipment was required to obtain performance and payment bonds, which the defendant issued. On April 21, 2000, the defendant and T Equipment executed a General Agreement of Indemnity. The agreement expressly assigned to the defendant all tools, equipment, and materials for the contracts as well as any sums T Equipment was entitled to receive under the construction contract. The assignment would be effective as of the date of the defendant’s issuance of a bond. The agreement also contained an indemnification clause whereby T Equipment agreed to indemnify the defendant for any sums expended on its guarantee.
On May 26, 2000, the plaintiff granted a loan to T Equipment for one million dollars. On the same day, it also issued a Revolving Line of Credit to T Equipment for $500,000. In order to secure payment of these sums, T Equipment executed a security agreement whereby it granted to the plaintiff a security interest of all of T Equipment’s assets including inventory, equipment, accounts receivable, fixtures, and general intangibles. Also on May 26, 2000, the plaintiff filed a financing statement with the Secretary of State, thereby perfecting its security interest under the Uniform Commercial Code (UCC).
In early 2001, as a result of T Equipment’s failure to make payments to numerous job creditors, the defendant made payments on the projects covered by the defendant’s performance and payment bonds. On June 3, 2002, T Equipment filed for bankruptcy. On October 23, 2002, the defendant filed suit against T Equipment for damages arising out of the indemnification agreement. It also sought a Reach and Apply as to all net proceeds from a public auction sale of T Equipment’s machinery that was to occur the next day. Upon completion of the auction on October 24, 2002, the sale proceeds were tendered to the defendant’s counsel. The plaintiff, alleging priority rights to the funds, then brought this suit for declaratory judgment. The proceeds are currently being held in escrow in a j oint account by the attorneys of the two parties.
2. The UCC and the Doctrine of Subrogation
The court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Mass.R.Civ.P. 56(e). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Attorney General v. Bailey, 386 Mass. 367, 371 (1982). In deciding a motion for summary judgment, the facts must be viewed in the light most favorable to the non-moving party. Id.
The plaintiff argues that it is entitled to summary judgment because under the UCC, G.L.c. 106, §9-312(5)(a), the time of filing or the time the security interest is first perfected determines the priority rank of conflicting security interests in the same collateral. See Lettinga v. Agristor Credit Corp., 686 F.2d 442 (6th Cir. 1982). The plaintiff asserts that because it perfected its security interest by filing a UCC Financing Statement on May 26, 2000, its security interest takes priority over the defendant’s assignment which did not take effect until May 2001 when T Equipment defaulted. The defendant maintains that the equitable remedy of subrogation is superior to the plaintiffs assignment.[1]
The UCC applies to any transaction intended to create a security interest in personal property or fixtures and to security interests created by contract. G.L.c. 106, §9-102(1)-(2). Asecurity interest is defined as “an interest in personal property or fixtures which secures payment or performance of an obligation.” G.L.c. 106, §1-201(37).
The doctrine of equitable subrogation stems from the principle that when one fulfills the duties of another pursuant to an obligation, he is entitled to assert the rights of that other person against third persons. Nat’l Shawmut Bank of Boston v. New Amsterdam Cas. Co., 411 F.2d 843, 844 (1st Cir. 1969). Thus, subrogation entitles a surety to “step into three sets of shoes.” Id. at 845.
When on the default of the contractor, it pays all the bills of the job to date and completes the job, it stands in the shoes of the contractor insofar as there are receivables due it; in the shoes of laborers and materiel men who have been paid by the surety — who may have had liens; and, not least, in the shoes of the [project owner], for whom the job was completed.

Id.

In Nat’l Shawmut Bank, the court, giving weight to the Supreme Judicial Court’s statement in French Lumber Co., Inc. v. Commercial Realty & Fin. Co., Inc., 346 Mass. 716, 719 (1964), that “no provision of the code purports to affect the fundamental equitable doctrine of subrogation,” held that the doctrine of subrogation allows a surety to be exempt from the system of priorities established by the UCC.[2] Id. at 849. The court reasoned that the type of security-interest involved in the business of a construction contract surety is not the type of security interest to which the UCC applies. For instance, a surety secures its payment via the opportunity, upon default, to finish the contractor’s job and apply any available funds against its cost of completion. As the court noted, “this right does not readily settle under the rubric of ‘personal property’ or ‘fixtures.’ ” Id. at 854-46. Furthermore, a surety’s security interest is not “created by *577 contract” as §9-102(2) requires. “(T]he real security... [is] the eventual right to be in the shoes of the [project owner] upon job completion. This is not ‘created by contract’ but rather by the status, resulting from a contract, inhering in a surety . . .” Id. at 846.
Thus, even though under the UCC the plaintiff may have established priority by perfecting its security interest, it is “irrelevant to an analysis of the [s]urety’s rights under the doctrine of equitable subrogation.” See Framingham Trust Co., 427 F.2d at 857 n.3. Even though the system or priorities established under the UCC serve the important purposes of establishing a degree of certainty in the determination of priorities among claimants and putting subsequent lienholders on notice of the existence of a prior security interest, “the practice of furnishing performance and payment bonds in connection with construction contracts is so common and so well known that a requirement of public filing is unnecessary.” See Canter v. Schlager, 358 Mass. 789, 794 (1971). The court also notes that the summary judgment record lacks any suggestion by the plaintiff that its loan was unrelated to the performance and payment bonds issued. Because the defendant does not have to conform to the filing requirements of the UCC to enforce its subrogation rights, the plaintiff is not entitled to judgment as a matter of law and its motion for summary judgment must be denied. Mass.R.Civ.P. 56(c).

The defendant also asserts that it has priority to the funds because T Equipment’s assignment to the defendant predated the plaintiffs loan to the plaintiff. Because the case is decided on other grounds, it is unnecessary to address this argument.

The court recognizes that the project owner in Nat’l Shawmut Bank, the United States government, was required under the Miller Act to apply for bonds from the defendant surety. However, the court in that case made clear that it was deciding the case on equity principles of surety law, and, in particular, Massachusetts law. Furthermore, in Framingham Trust Co. v. Gould-Nat'l Batteries, Inc., 427 F.2d 856, 858 (1st Cir. 1970), the court expressly stated that the propositions enunciated in Nat'l Shawmut Bank are not confined to cases arising under the Miller Act.