IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 20, 2011 Session

## BELLSOUTH ADVERTISING & PUBLISHING CORP.
## v. SENTAYEHU ABEBE, ET AL.

Appeal from the Circuit Court for Davidson County
No. 09C948      Joseph P. Binkley, Jr., Judge

No. M2010-01020-COA-R3-CV - Filed April 28, 2011

This appeal arises out of a suit to recover the balance on a past due account for an advertisement in a telephone directory. Defendant disputed the authenticity and admissibility of the documents submitted by plaintiff to establish an enforceable and valid contract. The trial court permitted the documents to be admitted and entered judgment for plaintiff. Defendant appeals, contending that the trial court erred in admitting the documents and in finding an enforceable contract. Finding no error, we affirm.

Tenn. Rule App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M. S., and ANDY D. BENNETT, J., joined.

Gary Dean Copas, Nashville, Tennessee, for the appellant, Sentayehue Abebe.

Phillip Douglas Patterson, Nashville, Tennessee, for the appellee, BellSouth Advertising & Publishing Corp.

**OPINION**

## I. BACKGROUND

On November 21, 2008, BellSouth Advertising & Publishing Corp. ("plaintiff") filed a complaint to recover the balance of an account allegedly owed by Sentayehu Abebe ("defendant") d/b/a Ultimate American Concrete for advertisement which ran in the 2007-2008 Nashville Yellow Pages. Defendant filed a counter-claim for breach of contract and sought recision. The case was tried in Davidson County General Sessions Court on March

9, 2009, which found for the Plaintiff and entered judgment of $5,000; defendant's counter-claim was dismissed.

Defendant appealed the decision to Davidson County Circuit Court, and the matter was set for trial on August 18, 2009. On August 14, defendant filed a motion seeking a continuance of the trial, asserting that plaintiff had not produced the original "directory advertising order (i.e., the printing proof)" upon which plaintiff's claim was based despite numerous discovery requests, and that defendant disputed the authenticity of the copy provided by plaintiff. Plaintiff did not oppose the continuance and, by agreed order, the trial was rescheduled for December 14, 2009. On November 20, defendant sought a second continuance and an order compelling plaintiff to respond to defendant's Tenn. R. Civ. P. 34 document request. The record does not contain an order granting the continuance or disposing of the motion to compel; trial took place on March 22, 2010.

On March 19, 2010, defendant filed a document styled "Defendant's Affirmative Defenses To Plaintiff's Pleading" asserting fraud, spoliation, illegality, and material breach of contract as affirmative defenses. He also filed the deposition of Leo Moceri, credit manager for the Middle and East Tennessee area of AT&T, who had been designated by plaintiff as its representative in accordance with Tenn. R. Civ. P. 30.02(6). Attached as an exhibit to the deposition was plaintiff's response to defendant's discovery requests, certified as being served on defendant on December 2, 2009, which stated that plaintiff "is not in possession of the original Advertising Order or other documents which form the basis of this lawsuit." The response included the affidavit of Mr. Moceri, sworn to on August 26, 2009, to which certain documents were attached. Mr. Moceri attested that the originals of the documents had either been lost or destroyed and could not be found and that the copies sent in response to defendant's requests for production were "true and accurate copies of the originals to the best of my knowledge information and belief." On March 22, 2010, defendant filed a motion *in limine* seeking to have the court deny admission into evidence a copy of a May 22, 2007 Directory Advertising Printing Order; defendant contested the authenticity of the document. The motion *in limine* was denied.[1]

Mr. Moceri and defendant were the only witnesses at trial. Through the testimony of Mr. Moceri, plaintiff introduced copies of a May 15, 2007 Advertising Order Signature Sheet; a May 22, 2007 Directory Advertising Printing Order; a statement titled "General Terms and Conditions" applicable to the account; and a May 22, 2007 Advertising Order

---

[1] The order denying the motion *in limine* was not filed until July 20, 2010.

Signature Sheet.[2]  Defendant testified that he did not sign the May 22 signature sheet and that, while he did sign a printing order on May 22, the order he signed was different than the one entered into evidence by plaintiff.  The court admitted into evidence the copies of the signature sheet, order, and proof offered by plaintiff and entered judgment for plaintiff in the amount of $14,501.68, representing the balance on the account, prejudgment interest, and attorney's fees, less $380 defendant paid as a deposit.

Defendant appeals, asserting that the trial court erred (1) in admitting into evidence the copies of the instruments upon which the plaintiff's claim was asserted and (2) in finding an enforceable instrument in support of the plaintiff's claim.

## II. DISCUSSION

### A.  Admissibility of document copies

Defendant's first issue relates to the court's admission of copies of documents dated May 15 and May 22, 2007; the original documents were not available.  While Tenn. R. Evid. 1002 generally requires the original of a writing, recording, or photograph to prove its content, Tenn. R. Evid. 1003 allows a duplicate to be admissible "to the same extent as an original unless a genuine question is raised as to the authenticity of the original."  Defendant contends that, because Mr. Moceri "could not attest at trial under oath that the duplicate was a copy of the original" and because "the signature on the copy is illegible,"[3] the documents were not properly authenticated.  Further, he argues that the copies should not have been admitted because there were "genuine issues of authenticity, fraud and lack of trustworthiness" relative to the documents tendered by plaintiff.

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims."  Tenn. R. Evid. 901.  Identification or authentication can occur in a number of ways, such as through a "witness with knowledge" or evidence of a process or system.  Tenn. R. Evid. 901(1), (9).

---

[2]  The signature sheet is a document on which the customer's order is set out and includes that products and features to be incorporated into the advertisement and the monthly cost thereof; the printing order contains the actual proof of the advertisement.

[3]  It appears from the testimony cited in his brief that the "copy" defendant is referring to is the May 22 signature sheet.

Mr. Moceri testified that, in 2007, plaintiff's document retention system included maintaining original account documents, including those of the sort at issue in this case, at its Birmingham, Alabama, office and scanning the documents into its document retention system; the originals were maintained for two to three years. If a matter went to litigation, the documents were transmitted electronically to the home office in Atlanta, Georgia, and, as necessary, to the office of the attorney handling the matter; the records are also available Mr. Moceri's office in Brentwood, Tennessee. The documents which were produced in discovery and at trial had been archived in plaintiff's record retention system. Mr. Moceri also testified that the records specific to this case were made by plaintiff's employees in the ordinary course of business and that it was plaintiff's regular practice to make and maintain such records for each of their customers' accounts.

Mr. Moceri's testimony demonstrated that he was familiar with the record retention system employed by plaintiff, and his testimony was sufficient for a court to conclude that he was a "person with knowledge" of the copies. Further, his testimony as to plaintiff's record retention system was evidence of a process or system whereby the copies introduced by plaintiff were maintained in a reliable manner. Such testimony was sufficient to authenticate the copies introduced by plaintiff.

The admissibility of evidence is within the sound discretion of the trial court. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992). Trial courts are generally accorded a wide degree of latitude in determining whether to admit or exclude evidence, and their decision will be overturned on appeal only where there is an abuse of discretion. *Id.* There was no evidence of fraud relative to the documents at issue and the trial court was free to resolve any concerns it had as to the trustworthiness of the documents by giving the documents appropriate weight. Upon our review of the record, the trial court did not abuse its discretion in admitting the documents.

### B. Finding of an enforceable contract

Defendant also asserts that the trial court erred in finding an enforceable instrument in support of plaintiff's claim. He contends that the "order contract" of May 22, 2007 was unenforceable because of fraud, spoliation of evidence, unlawful activity under 47 U.S.C. § 201(b) and material breach of contract.[4]

---

[4] These grounds coincide with the statement of defendant's affirmative defenses filed on March 19.

1. Fraud

The manner in which defendant claims that "fraud" renders the contract unenforceable is not clear from his brief on appeal; however, in his statement of affirmative defenses he states that "[t]he copy presented is the copy of a document which has been intentionally and fraudulently alterated [sic] from the original signed by the Defendant." In his brief he contends that defendant's denial that he saw or signed the May 22, 2007 advertising order is "sufficient evidence to support a finding of fraud in the avoidance of the contract." This contention is without merit.

Having raised these matters as affirmative defenses, defendant bore the burden of proof to establish them. *See Ottenheimer Publishers, Inc. v. Regal Publishers, Inc.*, 626 S.W.2d 276, 279 (Tenn. Ct. App. 1981). Apart from defendant's denial of the May 22 document, he cites no evidence to support a determination that there was fraud of any sort in relation to the document. As noted above, Mr. Moceri testified at length regarding the document handling and retention process utilized by plaintiff and how the documents which were introduced at trial were compiled and obtained;[5] there was nothing in his testimony or in the testimony of defendant to infer fraud.

2. Spoliation of Evidence

Defendant contends that, under the authority of *Cincinnati Ins. Co. v. Mid-S. Drillers Supply, Inc.*, M2007-00024-COA-R3-CV, 2008 WL 220287 (Tenn. Ct. App. Jan. 25, 2008), plaintiff's claim should be dismissed as a sanction for plaintiff's alleged spoliation of evidence. He contends that he is prejudiced by the absence of the original documentation and that "this is a case in which the destruction of the actual papers along with an illegible signature copy would forever prevent the Defendant from asserting a defense of fraud."

"The doctrine of spoliation of evidence permits a court to draw a negative inference against a party that has intentionally, and for an improper purpose, destroyed, mutilated, lost, altered, or concealed evidence." *Bronson v. Umphries*, 138 S.W.3d 844, 854 (Tenn. Ct. App. 2003). "This inference is rebuttable and arises only when the spoliation occurs in circumstances indicating fraud and a desire to suppress the truth. It does not arise when the destruction was a matter of routine with no fraudulent intent." *McLean v. Bourget's Bike Works, Inc.*, 2005 WL 2493479, * 4 (Tenn. Ct. App. Oct. 7, 2005).

---

[5] Mr. Moceri testified that the May 15 order was taken prior to a credit check which revealed that the defendant did not have the "credit availability" required for the order. The order was revised to meet plaintiff's "basic credit line," which was capped at approximately $800.00 per month; the May 22nd order was the revised order.

Defendant contends that when plaintiff learned that the account was in dispute, "it had a duty to use due care and preserve such Order [the Original Printing Order] and failed to present evidence of using such care." Assuming, *arguendo*, that a negative inference may be drawn by the absence of the original records, plaintiff's proof regarding its document retention practices and the reason for the absence of the original documents is sufficient to support a conclusion that the absence of the original documents was not procured by plaintiff in an effort to suppress the truth or with fraudulent intent. Mr. Moceri's explanation of the discrepancy between the May 15 and May 22 orders likewise belies a finding of fraudulent intent. In addition, there was no contrary or countervailing proof offered by defendant to support this affirmative defense.

### 3. Illegality or Unlawful Activity

Defendant asserts that plaintiff is "a common carrier engaged in interstate communication services" and subject to 47 U.S.C. § 201(b), which provides, in pertinent part, that "[a]ll charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful."[6] Defendant contends that "Plaintiff's practice of not having a policy (1) to maintain the actual papers marked-up and post-on Printing Orders or approved Proofs in lieu thereof and (2) to further maintain true and exact copies of signatures, competent for handwriting analysis, is an unjust and unreasonable practice." Defendant argues that the May 22, 2007 advertising

---

[6] 47 U.S.C. 201(b) states:

All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful: Provided, That communications by wire or radio subject to this chapter may be classified into day, night, repeated, unrepeated, letter, commercial, press, Government, and such other classes as the Commission may decide to be just and reasonable, and different charges may be made for the different classes of communications: Provided further, That nothing in this chapter or in any other provision of law shall be construed to prevent a common carrier subject to this chapter from entering into or operating under any contract with any common carrier not subject to this chapter, for the exchange of their services, if the Commission is of the opinion that such contract is not contrary to the public interest: Provided further, That nothing in this chapter or in any other provision of law shall prevent a common carrier subject to this chapter from furnishing reports of positions of ships at sea to newspapers of general circulation, either at a nominal charge or without charge, provided the name of such common carrier is displayed along with such ship position reports. The Commission may prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions of this chapter.

order should not be enforced because "such enforcement would promote an unlawful activity."

There is no evidence in the record that plaintiff, BellSouth Advertising & Publishing Corporation, is a "common carrier" subject to 47 U.S.C. § 201(b). 47 U.S.C.A. § 153 defines "common carrier" or "carrier" as:

> any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this chapter; but a person engaged in radio broadcasting shall not, insofar as such person is so engaged, be deemed a common carrier.

The statute is not applicable to this case.

Moreover, the unavailability of the original document, without more, does not support a finding that plaintiff was engaged in an unjust, unreasonable, or unlawful activity. Mr. Moceri testified that plaintiff maintained a record retention system through which original documents and hard and electronic copies were maintained in Birmingham, Alabama; that the original documents at issue in this case were either lost or destroyed and could not be obtained; and that the copies introduced by plaintiff represented all the records available. The document retention system was reasonable and not tainted by fraud or improper motive or use.

4. Material Breach of Contract

Defendant's final assertion is that plaintiff materially breached the "telephone service contract" because the published advertisement contained an incorrect telephone number and that plaintiff's breach supports rescission of the contract. Defendant contends that he "substantially complied" with the requirement of the general terms and conditions of the contract that he give plaintiff notice of the error and that his affirmative defense of plaintiff's material breach should not be foreclosed.

Paragraph fourteen of the terms and conditions states:

> Any claim arising out of an error in publication of Advertising or any claim arising out of the publication of the directory or directories must be made in writing to us within six (6) months of publication of the directory or directories (print or Internet). Otherwise the claim shall be deemed waived by you.

In regard to the publication of the erroneous telephone number, the court stated:

> And then it states in item 14 of the contract, the limitation period, any claim arising out of an error in publication of advertising or any claim arising out of the publication of the directory or directories must be made in writing to us within six months of the publication of the directory; otherwise, the claims will be deemed waived. Well, six months is a long time to claim an error. There certainly was an error in the second cell phone number. There are two errors, and two of the numbers are incorrect based upon the testimony of the plaintiff, and that's all the testimony I have to go by. But the plaintiff freely admitted he did not put his claim in writing at all, much less within the six-month period of time of publication.
> So, you know, he - - unfortunately, the defendant, based upon the terms of the contract, waived his right to claim the error and therefore put the issue into some kind of arbitration that might have saved him some of this advertising.

Defendant concedes on appeal, as at trial, that he did not notify plaintiff in writing of the incorrect number. The trial court did not err in finding this to constitute a waiver of a claim for damages or other relief arising from the publication of the erroneous phone number pursuant to the terms of the contract. To the extent defendant's affirmative defense was predicated on plaintiff's breach,[7] the waiver operated to eliminate rescission of the contract as a remedy.

## III. CONCLUSION

For the foregoing reasons, the judgment of the Circuit Court for Davidson County is AFFIRMED.

_____

RICHARD H. DINKINS, JUDGE

---

[7] In light of our holding on this issue, it is not necessary to reach the issues of whether the erroneous listing would constitute a breach of contract and, if so, whether it was a sufficiently material breach to relieve defendant of his responsibilities or whether rescission would be the appropriate remedy.