EDYTHE G. MASSA *ET AL.*, PLAINTIFFS-RESPONDENTS, v.
JOHN LAING, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 18, 1977—Decided February 22, 1977.

Before Judges MATTHEWS, SEIDMAN and HORN.

*Mr. John R. Scott,* attorney for appellant.

*Messrs. Sobel* and *Lyon,* attorneys for respondents (*Mr. Rexford Lyon* on the brief).

PER CURIAM. Defendant appeals from a judgment impressing a constructive trust upon certain real estate he had inherited as the sole heir of his wife, who died intestate in 1973. This lawsuit, seeking such relief, had been instituted by decedent's brothers and sisters, who alleged that she had intended the property to go to them upon her death, but that the absence of a will accomplishing that purpose was because of defendant's undue influence and her mistake. We reverse.

Until her marriage to defendant in 1960 decedent, who was then approximately 45 years of age and the eldest of six children, lived with her parents in the family residence in Newark. Four years later, following the death of her father, she and her husband moved into the family home in order to live with and look after her mother. In 1969 the mother, terminally ill and hospitalized, executed a will, apparently at Matilda's request, leaving to her the residuary estate, con-

sisting essentially of the residence, and providing that if Matilda predeceased her, the estate would be divided equally among the surviving children.

According to the testimony of Edythe Massa, one of decedent's sisters, the property had become the subject of discussion among the brothers and sisters after their mother's death. Some of them were upset because of the mother's will, but she professed to have complete faith that Matilda would return the property to them. The others wanted Matilda to draw up a will to insure that result. Mrs. Massa recalled a conversation between one of her brothers and decedent a few months before the latter's death in which, in response to his inquiry as to when she was going to make a will, Matilda said she did not need one.

Another sister, Anne Fuccello, testified that after the execution of her mother's will, she, her sister Genevieve Golden, and the latter's husband confronted Matilda and announced their intention to contest the will. Mrs. Fuccello said that Matilda told them, "Why get so excited? * * * The house belongs to you kids." She said further that defendant commented, "I don't want the house, what am I going to do with it?" This version of what occurred was substantially corroborated by Mrs. Golden, who added that on several occasions thereafter, when she suggested that Matilda should make a will, her sister told her not to worry, "[t]he house is yours."

Further testimony was given by decedent's aunt and her brother Romeo that Matilda has stated she did not need a will because the house was going back to her brothers and sisters. Laddie Ciafarone, the other brother, related that he talked with defendant about the disposition of the property after his sister's death and that he was offered $5,000 for the interest in the house of the brothers and sisters, an offer they refused to accept.

Defendant testified that he never had any discussion with his wife about a will, and he did not know when she died whether she had a will. He denied discussing the subject of

a will with his wife's brothers and sisters, but admitted offering each of them $1,000.

The trial judge stated in his letter opinion that he was

* * * fully satisfied of the intestate's intent and expectation that the property would be taken by the plaintiffs upon her death. This conclusion is drawn both from oral statements made by the decedent and in the intent which she expressed in the will she had drawn for her mother's signature that plaintiffs and not her husband were to receive the property in the event she predeceased Mrs. Ciafarone. Her expectation was fostered and reinforced by the defendant's disavowal of any intent to retain the property after her death. Had he given her reason to believe that he would not relinquish his interest in the house to the plaintiffs upon her death she would have made appropriate testamentary arrangements to accomplish her clearly stated purpose. She was an honorable person and the court rejects any suggestion that the assurances were given for reasons of deception.

■ Giving full credence to plaintiff's testimony, we are, nevertheless, not convinced that the imposition of a constructive trust in this case was warranted. Such trust, of course, may be impressed in any case where to fail to do so will result in an unjust enrichment. *Clark v. Judge*, 84 *N. J. Super.* 35, 61 (Ch. Div. 1964), aff'd o.b. 44 *N. J.* 550 (1965). In *D'Ippolito v. Castoro*, 51 *N. J.* 584 *(1969)*, the court said:

Generally all that is required to impose a constructive trust is a finding that there was some wrongful act, usually, though not limited to, fraud, mistake, undue influence, or breach of a confidential relationship, which has resulted in a transfer of property. *Cf. Neiman v. Hurff*, 11 *N. J.* 55 (1952). *Scott on Trusts, supra*, § 462.2, *p.* 3417, goes so far as to suggest that "A constructive trust may arise, however, even though the acquisition of the property was not wrongful. It arises where the retention of the property would result in the unjust enrichment of the person retaining it." We need not decide, however, whether a constructive trust may arise absent any wrongdoing on the part of the alleged constructive trustee, for Castoro * * * committed a wrongful act. [at 589]

■ A constructive trust must be established "by clear, definite, unequivocal and satisfactory evidence." *Gray v. Bradley*, 1 *N. J.* 102, 104 (1948). See also, *Aumack v. Jack-*

*son*, 79 *N. J. Eq.* 599 (E. & A. 1911) ; *Vreeland v. Williams*, 32 *N. J. Eq.* 734 (E. & A. 1880) ; *Dessel v. Dessel*, 122 *N. J. Super.* 119 (App. Div. 1972), aff'd o.b. 62 *N. J.* 141 (1973) ; *In re Estate of Land*, 99 *N. J. Super.* 500 (Ch. Div. 1968).

The trial judge's concept here was that decedent's husband had somehow led her to believe that he had no desire to retain the property and would carry out her expressed wish after her death, and that had he not done so she would have made appropriate provision in a will. This was, according to the trial judge, a case where the retention of the property by defendant would result in his unjust enrichment. In reaching these conclusions the trial judge relied heavily on *Amherst College v. Ritch*, 151 *N. Y.* 282, 45 *N. E.* 876 (Ct. App. 1897), which enunciated the principle that where a testator is induced either to make a will or not to change one after it is made, by a promise, express or implied, on the part of a legatee that he will devote his legacy to a certain lawful purpose, "a secret trust is created, and equity will compel him to apply property thus obtained in accordance with his promise." 45 *N. E.* at 887. Furthermore, said the court in the cited case, "[t]he same rule applies to heirs and next of kin who induce their ancestor or relative not to make a will by promising, in case his property falls to them through intestacy, to dispose of it, or a part of it, in the manner indicated by him." We are of the view that the case has no application to the facts here involved.

It may be that decedent intended her brothers and sisters to have the family home upon her death. But we find nothing in the record from which it can reasonably be inferred that decedent was induced not to make a will because of what her husband had said or that she was misled by him in any way. The most that can be derived from the record is an indication by defendant that it did not matter to him if his wife wished to leave the property to her brothers or sisters. He did not disavow "any intent to retain the property after [his wife's] death," notwithstanding that remark by the trial judge in his letter opinion. There was no commit-

ments on defendant's part to relinquish his interest in the property upon his wife's death. Defendant's apparent attempt thereafter to purchase "plaintiffs' interest" is not persuasive evidence to the contrary. Plaintiffs' proofs fall short of the clear and convincing standard for establishing a constructive trust.

Our dissenting colleague, after chiding us for "substituting [our] judgment and findings for that of the trial judge without a proper foundation for doing so and by exceeding the scope of [our] review," which we did not do, attempts to buttress the trial judge's conclusions by suggesting findings which, he says, could have been made below "as his conclusions indicate." In our view, such findings are as unsupported by the record as was the trial judge's interpretation of defendant's statements as testified to by plaintiffs. It would be sheer speculation to hold on the proofs before us that decedent influenced her mother to leave the house to her or that the mother believed that ultimately, upon the daughter's death, plaintiffs would receive the property. Moreover, we perceive neither a misrepresentation nor an inducement in anything that defendant is supposed to have said, accepting at face value the testimony of the plaintiffs. In short, it is our task to review the case made below, not one that might have been made.

Reversed.

HORN, J. A. D. (dissenting). I must respectfully dissent from the conclusions reached by my colleagues on the basis of which they reverse the judgment entered by the trial judge.

Contrary to their determination, it is my opinion that there not only was sufficient credible evidence in the record to warrant the trial judge's findings, but the majority, I fear, has substituted its judgment and findings for that of the trial judge without a proper foundation for doing so and by exceeding the scope of its review. *State v. Johnson*, 42 *N. J.* 146 (1964).

The evidence on which the trial judge made his findings with one exception consisted of the testimony of witnesses having a personal interest in the outcome of the litigation, namely, brothers, sisters and a spouse of one sister of decedent on the one side, and defendant, husband of decedent, on the other side. The exception was Mrs. Marie Raciti, an aunt of decedent, who testified that decedent on numerous occasions had told her that the house would go back to her sisters and brothers. On one occasion defendant had walked in during such a conversation and affirmatively stated that he did not want the house.

The majority says:

It may be that decedent intended her brothers and sisters to have the family home upon her death. But we find nothing in the record from which it can reasonably be inferred that decedent was induced not to make a will because of what her husband had said or that she was misled by him in any way. The most that can be derived from the record is an indication by defendant that it did not matter to him if his wife wished to leave the property to her brothers or sisters.

To the contrary, inherent in the judge's findings are that decedent influenced her mother, who was the mother of plaintiffs, to leave the house to her; that the mother of decedent believed that ultimately plaintiffs would receive the property upon the death of decedent before them; that plaintiffs were prepared to take action against decedent after their mother's death to set aside the testamentary gift to decedent because of undue influence, and that no such action was brought because of the assurances given by decedent and defendant that upon decedent's death the house would go to her brothers and sisters. The testimony of plaintiffs' witnesses was corroborated by the admitted attempt of defendant to purchase the house after his wife died by offering to pay $5,000 for it. In addition, defendant failed to categorically deny the various statements which the witnesses testified were made by him. These statements attributed to defendant were:

(1) To Mrs. Fuccello — "I don't want the house. What am I going to do with it?"

(2) To Mrs. Golden — "You don't have to worry. The house will be back to you."

(3) To Mrs. Raciti — "I don't want the house."

In a case such as the instant one, the "feel" that the judge obtains from hearing the testimony, and his ability to assess the credibility, sincerity and veracity of the witnesses, must play a major role in the composition of his findings, which the appellate courts are constrained to respect. If the findings and result rest upon sufficient credible evidence, the appellate court must not disturb the result "even though it has the feeling it might have reached a different conclusion were it the trial tribunal." *State v. Johnson, supra* at 161–162.

I agree with the majority that a constructive trust must be established "by clear, definite, unequivocal and satisfactory evidence." However, that does not mean that there can't be contradictory evidence or that if there is contradictory evidence it is impossible for the trier of facts to find that a constructive trust has been established. I suspect that the majority's failure to accord the trial judge's findings the deference that they deserve arises from its lack of appreciation of all the circumstances, including those which might be inferred from the testimony as well as the relationship of the parties. Such circumstances include what has already been stated concerning the forebearance of plaintiffs to institute proceedings during the life of decedent to set aside their mother's devise of the house to decedent; defendant's presence when his wife reassured her siblings as to the house, as well as his own assurances; defendant's offer to pay for the house after his wife died; the apparent lack of knowledge of all the parties as to the legal formalities necessary to pass title by will or through intestacy; the natural conversations which would have taken place between decedent and defendant concerning the house; decedent's actions in procuring the execution of the will devising the

house to her to the exclusion of her sisters and brothers in the light of the apparent close relationship among all the children and their mother; the fact that defendant was 80 years old at the time of his testimony, and the length of time that he had been married to decedent.

The majority also discounts the applicability of *Amherst College v. Ritch,* 151 *N. Y.* 282, 45 *N. E.* 876 (Ct. App. 1897), apparently because it overlooks the fact that plaintiffs were induced by decedent and defendant to withhold action after decedent's mother died. All of the testimony except the weak denial of the husband defendant, even in the face of his offer to pay plaintiffs, warranted the trial judge's concluding that not alone did defendant assure decedent that he would see to it that the property would go to plaintiffs, but that he also gave the same assurances to plaintiffs.

The majority asserts that defendant did not "disavow 'any intent to retain the property after [his wife's] death,' notwithstanding that remark by the trial judge in his letter opinion." Such conclusion is erroneous for two reasons: first, because my colleagues refuse to give reasonable effect (reasonable inferences) to the actual words uttered by defendant, and second, there need not be an actual "commitment on defendant's part to relinquish his interest in the property upon his wife's death," as implied by the majority opinion. The trial judge's decision may be posited upon the misrepresentations and inducement that defendant's statements created by inference as well as expressly.

For the foregoing reasons I would affirm.