220 N.J. Super. 506 (1987)
532 A.2d 1125
MOUNT HOLLY STATE BANK, PLAINTIFF-APPELLANT,
v.
MOUNT HOLLY WASHINGTON HOTEL, INC., A NEW JERSEY CORPORATION, EBERHARD E. WEIGEL, STERLING DAVIS, JR., AND WILLIAM K. MCDANIEL, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 29, 1987.
Decided October 14, 1987.
*507 Before Judges PRESSLER, BILDER and SKILLMAN.
Apell and Mathews, attorneys for appellant (Paul C. Detrick, on the brief).
Milton Josephson, attorney for respondents Sterling Davis, Jr. and William K. McDaniel.
The opinion of the court was delivered by BILDER, J.A.D.
*508 This is an appeal by a bank from a judgment entered in favor of guarantors following a bench trial. At issue is the liability of signers of unconditional and continuing guaranties of the obligation of a corporate business after they have sold their interests in the business in the absence of a specific notice to the lender of revocation.
Putting aside their significance and characterization, the facts are basically undisputed. In February 1980 the Mount Holly Washington Hotel, Inc. (Hotel) received a $10,000 loan from the Mount Holly State Bank (Bank). At that time the corporation had three principals: Eberhard Weigel, Sterling Davis, Jr. and William McDaniel. In connection with the loan each of the principals executed personal guaranties. They were contained on the Bank's form and could be generally described as a broad guaranty of any and all of the obligations of Hotel to the Bank then existing or thereafter created. Each was substantially similar to the guaranty described by Judge Dreier in First New Jersey Bank v. F.L.M. Bus. Machines, 130 N.J. Super. 151 (Law Div. 1974) as "the usual complicated, small-print type of banker's guaranty, in general use throughout the State." Id. at 154. As pertinent to this case it (1) guaranteed prompt payment "of any and all obligations, liabilities and indebtedness of any kind of [Hotel] to [Bank], howsoever created or incurred and whether now existing or hereafter arising"; (2) waived notice of acceptance and "notice of any of [Hotel's] indebtedness heretofore or hereafter incurred, or contracted or renewed or extended"; (3) agreed that Bank might at any time or from time to time at its discretion, "in such manner and upon such terms as [it] may deem fit, without notice to the [guarantor] and without releasing, impairing or affecting to any extent the liability of the [guarantor], who agree[s] to be and remain bound upon [the] Guaranty, irrespective of the existence, value or condition of any collateral ... renew, extend, modify, change or waive the time of payment and/or the manner, place or terms of payment of all or any part of *509 [Hotel's] indebtedness, or any renewal thereof"; and (4) provided the guaranty "shall be a continuing, absolute and unconditional Guaranty and shall remain in full force and effect for one calendar month after written notice of its revocation shall have been actually received by [Bank], by registered mail; provided, however, that such revocation shall not release the [guarantor] from any liability as to any of [Hotel's] indebtedness to [Bank] which may have been created or incurred or is in existence at the time the revocation becomes effective, or as to any renewal or extension thereof."
A few months later, in June 1980 Davis and McDaniel sold their interest in Hotel to Weigel. At that time Bank's president, Hall, was given a copy of the sales agreement and changes were made in the authorized signatures for the corporation. In his testimony Hall acknowledged his awareness of the sale. No specific notice of revocation of the guaranties was given to Bank, written or oral.
The original loan of February 1980 was $10,000 for two years with interest at the prime rate plus two percent with a floor of thirteen percent and monthly payments of $416. It fell into arrears and was not paid when due  a balance of $2096 remaining in January 1982. At that time Hotel submitted a new application to Bank for a renewal loan of $2096 for one year with interest at the prime rate plus three percent with a floor of fifteen percent; principal payments of $175 and interest monthly. A new note for the $2096 was executed by Hotel and presumably the old $10,000 note was marked "paid" and returned to the borrower; according to Hall this was the Bank's customary procedure. Weigel executed a new guaranty. Davis and McDaniel were not advised of the extension; a fortiori no new guaranties were obtained.
The loan (whether characterized as the original $10,000 loan as extended or a new $2096 loan) was not paid and went into default, resulting in the instant litigation. Bank sued Hotel as the borrower and Weigel, Davis and McDaniel as guarantors. *510 Apparently Hotel and Weigel are insolvent; only Davis and McDaniel, respondents in this appeal, are viable defendants.
Following a bench hearing, the trial judge held that the acceptance by Bank of a new note with changed terms (interest rate and manner of payment) resulted in a novation. In his oral opinion of June 16, 1986 he found that the mere extension of time did not release the guarantors, nor did the increase in the interest rate; however
By signing the note off and returning the original to Mr. Weigel on behalf of Mount Holly Washington Hotel, [Bank] created a new note. And therefore, I hold in this case that because the guarantee that exists here or guaranties by Mr. Davis and Mr. McDaniel apply to the original note which has now been satisfied under 12A:3-605, they are now discharged.
He therefore entered a judgment in favor of defendants Davis and McDaniel. Bank appeals contending:
I. The January 6, 1982 note represented an extension and modification of the terms for payment of an existing obligation (the February 15, 1980 note) rather than the creation of a new obligation.
A. The record contains insufficient evidence to support any conclusion regarding either possible markings upon, or the whereabouts of, the original February 15, 1980 note.
B. Even if the Court's factual findings are adequately supported by the record, those findings do not support the legal conclusion that Defendant's obligation to Plaintiff is cancelled.
II. Assuming arguendo that the January 6, 1982 note was a new obligation rather than an extension and modification of the original loan, the guarantee agreements dated February 15, 1980 nevertheless rendered defendants liable for payment of this new obligation.
We are persuaded the trial court's conclusion that marking the old note paid and returning it to Hotel destroyed the old indebtedness was error. See First New Jersey Bank v. F.L.M. Bus. Machines, supra at 154 (semble). Whether Bank retained the original note or marked it paid and returned it to Hotel is irrelevant. Here, the clear intention (as evidenced by the extension agreement and loan application as well as the liability ledger and testimony of the Bank) was to extend the note for an additional year and to memorialize that extension and the balance yet remaining due by the new note. Whether the giving of a note pays off the old depends upon the intention *511 of the parties. See Slaughter v. Philadelphia National Bank, 417 F.2d 21, 27 (3d Cir.1969). Whether characterized as an extension or novation, the broad powers given the Bank by the guaranty permitted it to handle the technical details in whatever manner it wished. Clearly defendants cannot claim they were prejudiced by the method selected. The terms of the guaranty must be read in the light of commercial reality  in accord with the reasonable expectations of persons in the business community involved in transactions of this type. See First New Jersey Bank v. F.L.M. Bus. Machines, supra 130 N.J. Super. at 157. The evidence here is that the Bank's procedure was in accordance with its routine practice.
More importantly, even if we were to treat the original 1980 loan as satisfied by the 1982 note so as to discharge any guarantor liability with respect to that indebtedness, Davis and McDaniel would still be liable for the new indebtedness by virtue of the "hereafter arising" provision of their undertaking, i.e. they agreed to guarantee future loans. Their guaranties were revocable as to future loans but only to the extent notice was given prior to the transaction. See 10 Williston on Contracts § 1253 (3d Ed. Jaeger 1967). Once the advance was made, the offer of guaranty is no longer revocable. See 1 Corbin on Contracts § 38 at 162 (1963); 38 C.J.S., Guaranty § 36 (1943). Defendants' arguments seem to assume that notice of the sale of their ownership interest in Hotel amounted to notice of revocation. Nothing could be further from the fact. Not because such notice would not comply with the clear requirement of the guaranty that it be given in writing by registered mail but because no logical reason existed for interpreting it as a revocation. The logic of assuming that notice of the sale of their ownership interest should be understood as notice of revocation of the guaranties is that since these guarantors no longer had an interest in the Hotel, they would have no interest in further loans by the Bank. This however is a non sequitur because the agreement clearly showed that they continued to have a substantial financial interest in the continued *512 viability of the business. Although they sold their ownership interest, they only received a small part of the $125,000 consideration  $10,000. The balance was secured by liens on the real and personal property and an escrow of the stock. A default in the bank loan was specifically made a default under the sales agreement. Rather than showing a termination of interest in Hotel, the sales agreement evidenced a continuing real and substantial interest such as would have induced the type of guaranty given to the Bank in 1980. Not only was the guaranty effective as to a new loan but their interest was such that it could not be characterized as an accommodation.
Reversed and remanded with directions for entry of a judgment for plaintiff in an amount to be determined from the proofs.