618 A.2d 303

DELAWARE TRUCK SALES, INC., PLAINTIFF–APPELLANT, v. EDWARD L. WILSON AND JOAN WILSON, A/K/A JOAN E. JABLONSKI WILSON, HIS WIFE, DEFENDANTS–RESPONDENTS, AND DELAWARE REPAIR SERVICES, INC. AND R.H. MACY COMPANY (BAMBERGERS DIVISION), DEFENDANTS.

Argued January 22, 1992—Decided January 14, 1993.

*Harry A. Horwitz* argued the cause for appellant (*Davis, Reberkenny & Abramowitz,* attorneys; *Harry A. Horwitz* and *Richard A. Barkasy,* on the briefs).

*Louis G. Rubino* argued the cause for respondents (*Hoffman, DiMuzio, Hoffman & Marcus,* attorneys).

The opinion of the Court was delivered by

HANDLER, J.

This case presents issues of commercial law arising from the secured indebtedness of a business corporation and attempts by two creditors to satisfy their respective obligations out of the same collateral security. The controversy arose after the debtor defaulted on both obligations. The debtor surrendered to the second or junior creditor its accounts receivable, which the junior creditor then collected. The senior creditor, a bank, which had obtained a default judgment against the debtor, made a claim against the junior creditor, contending that it had a first priority lien on the accounts receivable. The junior creditor paid the bank a sum approximating the bank's judgment against the debtor in exchange for the bank's judgment together with the underlying debt and all its security. The junior creditor thereafter instituted this action to foreclose on the residential mortgage that the personal guarantors had given to the bank to secure the underlying debt. However, the debtor and guarantors claimed that the debt to the bank had been satisfied when the junior creditor collected the accounts receivable and paid them over to the bank.

The Chancery Division granted the junior creditor's motion for summary judgment. The Appellate Division reversed in an unreported opinion. This Court granted certification. 126 *N.J.* 340, 598 *A.*2d 897 (1991).

I

On August 20, 1984, Delaware Repair Service, Inc. (Delaware Repair) entered into a financial agreement with Royal Bank of

Pennsylvania (Royal Bank or bank). Royal Bank loaned $75,-000 to Delaware Repair evidenced by a demand promissory note. Delaware Repair also secured the loan. It execùted a financing statement covering all of its "inventory, equipment, fixtures, machinery, appliances, tools, furniture and furnishings, leasehold interests, accounts receivable, now and hereafter acquired." Royal Bank filed that financing statement with the Camden County Clerk on September 19, 1984, and with the Secretary of State on September 25, 1984. As further security for the loan to Delaware Repair, defendants, Edward Wilson, a principal of Delaware Repair, and his wife, Joan Wilson, personally guaranteed the loan, which in turn was secured by a mortgage on their residence.

Plaintiff, Delaware Truck Service, Inc. (Delaware Truck), a corporation engaged in the cargo-container-repair business, sold its assets to Delaware Repair. According to the sales contract, dated September 6, 1984, the assets transferred included: "the machinery and equipment of the Seller as set forth on Exhibit 'A' hereto the business and goodwill of the Seller and including all customer records and files presently in the hands of Seller." Delaware Repair agreed to pay Delaware Truck a total of $300,000, $30,000 in cash, plus a promissory note for $270,000 payable in sixty equal monthly installments. Defendant Edward Wilson and George Fandrick, both former employees of Delaware Truck, personally guaranteed payment on the note. The agreement provided that Delaware Repair would execute "financing statements" that would create a lien in favor of plaintiff covering all assets sold, plus a "secondary lien" on Delaware Repair's accounts receivable, "subject only to a prior lien in favor of Purchaser's institutional lender." Delaware Truck filed a financing statement covering Delaware Repair's "inventory, equipment, fixtures, machinery, appliances, tools, furniture and furnishings, now and hereafter acquired" with the Secretary of State on August 29, 1984 (which predated the signing of the sales agreement), and with the Camden County Clerk on September 13, 1984. It filed a separate financing

statement on October 4, 1984, covering Delaware Repair's accounts receivable.

Delaware Repair eventually defaulted on its payments to Delaware Truck and Royal Bank. On May 27, 1988, Delaware Repair entered into an agreement with Delaware Truck whereby Delaware Repair acknowledged its inability to pay the $166,935.58 it owed plaintiff and surrendered to plaintiff all of the assets in which plaintiff held a security interest. According to the "Surrender Agreement," those assets included "inventory, equipment, fixtures, machinery, appliances, tools, furniture and furnishings, now and hereafter acquired," as well as its accounts receivable. The agreement also noted that the accounts receivable were "probably" subject to a "secondary lien * * * in favor of Royal Bank of Pennsylvania * * *." In the months following the surrender of assets, plaintiff collected $98,600 from Delaware Repair's accounts receivable, and applied that money to Delaware Repair's debt.

In December 1988, Royal Bank sued Delaware Repair and the guarantors on the unpaid promissory note and obtained a default judgment against Delaware Repair and the guarantors in the full amount of $62,000. The record does not indicate that any of the defendants interposed any defenses. Thereafter, Royal Bank, apparently having learned that Delaware Truck had obtained and collected the debtor's accounts receivable, sought to recover from Delaware Truck the amounts thus realized. In April 1989, Royal Bank entered into a settlement agreement with Delaware Truck. Delaware Truck paid $59,500 in exchange for an assignment of Royal Bank's judgment against Delaware Repair and the guarantors, its security interests in Delaware Repair's assets, and the Wilsons' personal guaranty secured by the mortgage on the Wilson home. Royal Bank also entered into a subordination agreement with plaintiff whereby Royal Bank acknowledged that "every security interest held by Royal Bank in each and every asset of Delaware Repair Services, Inc. is subordinate to the security interest of Delaware Truck."

In April 1989, Delaware Truck filed suit against Delaware Repair, Edward and Joan Wilson, and George Fandrick seeking to collect on the note made by Delaware Repair in favor of plaintiff, as well as on Royal Bank's judgment.[1] It sued to enforce both the note and personal guaranties. In July 1989, defendant Edward Wilson filed for personal bankruptcy. Plaintiff then filed a motion in bankruptcy court seeking to modify the automatic stay so that it could foreclose the mortgage on the Wilsons' residence, which constituted security for the Wilsons' personal guaranty. The bankruptcy court granted the motion, and plaintiff, as assignee of Royal Bank, filed the complaint in this action seeking to foreclose on the Wilsons' residence.

The trial court granted plaintiff's motion for summary judgment. Defendants argued that because Royal Bank had the first lien on accounts receivable, plaintiff should have applied the proceeds from the accounts receivable to satisfy the mortgage obligation in favor of Royal Bank. The trial court rejected defendants' arguments on two grounds. First, the trial court found that plaintiff had a senior security interest in the accounts receivable because plaintiff had filed a financing statement before Royal Bank. Second, even if plaintiff's security interest was junior to Royal Bank's, the trial court found that plaintiff had obtained the senior security interest through the assignment and subordination agreements. The trial court relied on the language of the guaranty made by the Wilsons to Royal Bank, which stated that the guaranty may be enforced "without first resorting to any security or other property or invoking other available rights or remedy."

---

[1] Timothy Realty Corporation, the owner of the property on which Delaware Repair's operations were being conducted, was also a plaintiff. The debtor apparently had defaulted on its rental obligations to Timothy Realty in 1985. The record does not disclose the dispositions relating to this plaintiff or defendant George Fandrick.

The Appellate Division reversed, concluding that plaintiff could not foreclose on the mortgage. The Appellate Division found that Royal Bank was first to file a financing statement covering accounts receivable and therefore had priority over plaintiff's security interest in Delaware Repair's accounts receivable. The Appellate Division, however, further determined that because the moneys collected by plaintiff from Delaware Repair's accounts receivable should have been applied to Royal Bank's debt, the latter's debt had been satisfied and extinguished with the payment to Royal Bank.

## II

Plaintiff first argues that it had priority with respect to Delaware Repair's accounts receivable, and therefore its realization of the proceeds from the accounts receivable prior to the assignment of Royal Bank's interests against Delaware Repair could not satisfy Delaware Repair's debt to Royal Bank.

Both creditors, Delaware Truck and Royal Bank, had perfected their respective security interests in Delaware Repair's assets through the execution of financing statements describing the collateral. *N.J.S.A.* 12A:9–302 and 303. Delaware Repair executed a UCC–1 financing statement in favor of Royal Bank on its demand promissory note covering accounts receivable. Delaware Repair gave plaintiff a financing statement on the debtor's promissory note which created a lien on all or most of its assets, including accounts receivable. Consequently, each secured creditor had a perfected security interest in the same collateral.

*N.J.S.A.* 12A:9–312 addresses the priority of creditors with respect to collateral. When no special priority rules are in effect, *N.J.S.A.* 12A:9–312(5)(a) governs the determination of priority between parties with a security interest in the same collateral:

> In all cases not governed by other rules in this section * * * priority between conflicting security interests in the same collateral shall be determined according to the following rules:
> (a) Conflicting security interests rank according to priority in time of filing or perfection * * *.

Thus, priority to collateral and its proceeds depends on when the parties filed financing statements covering the claimed collateral.

On August 29, 1984, Delaware Truck filed a financing statement covering the debtor's assets with the Secretary of State. That financing statement did not mention Delaware Repair's accounts receivable. However, the sales agreement between these parties, dated September 6, 1984, stated that the lien in favor of plaintiff was only "secondary" with respect to the accounts receivable. Although the agreement by its date was executed after the filing of the financing statement, that the basic understanding embodied therein preceded the filing of Delaware Truck's first financial statement is inferable from its reference to accounts receivable. On September 25, 1984, Royal Bank filed a financing statement that specifically covered the debtor's accounts receivable. Thereafter, on October 4, 1984, plaintiff filed an additional financing statement covering the debtor's accounts receivable.

The trial court found that plaintiff had priority over the accounts receivable interests of Royal Bank. The Appellate Division disagreed. It gave considerable weight to the September 6, 1984 agreement between plaintiff and Delaware Repair, which acknowledged that plaintiff's security interest in the accounts receivable was subject to Royal Bank's prior lien. Plaintiff concededly had filed its financing statement with the appropriate offices, respectively, on August 29 and September 13, 1984. However, that financing statement did not specify accounts receivable among the covered assets. On the other hand, Royal Bank, before the end of September 1984, filed a financing statement that expressly and specifically covered accounts receivable. Only thereafter, on October 4, 1984 did

plaintiff file a second financing statement that specifically referred to accounts receivable. By that time, Royal Bank held a priority-lien position with respect to the accounts receivable.

Plaintiff alleges, however, that because it was first to file a financing statement with respect to "inventory," Royal Bank does not have priority over any inventory-generated accounts receivable. See discussion, *infra*, at 30–31, 618 *A*.2d at 308–309. Barring this claim, we are thus satisfied that the Appellate Division correctly concluded that Royal Bank's priority interest in the accounts receivable of Delaware Repair was superior to the security interest of plaintiff.

## III

After Delaware Repair's defaults, the creditors independently proceeded against the debtor to obtain satisfaction of their respective debts. Delaware Repair turned over all of its assets to Delaware Truck through a surrender agreement, which included its accounts receivable and inventory. Plaintiff realized $98,000 from the proceeds of the accounts receivable. Royal Bank separately obtained a default judgment against Delaware Repair. Royal Bank then made a claim against Delaware Truck, presumably when it learned that Delaware Truck had obtained the accounts receivable and had proceeded to collect them. Royal Bank and Delaware Truck entered into an assignment and subordination agreement whereby Delaware Truck paid Royal Bank $59,500 and Royal Bank assigned to plaintiff its $62,000 default judgment against Delaware Repair, together with the personal guaranties and its secured collateral.

The lower courts held diametrically opposing views of the legal consequences of those transactions. As earlier mentioned, the trial court found that Delaware Truck had properly obtained the senior security interest in defendant's assets because it had filed a financing statement before Royal Bank, and had later received an assignment of Royal Bank's interest. The Appellate Division, however, found that Royal Bank was the

first to file a financing statement with specific reference to the accounts receivable, and determined that Royal Bank had the senior security interest in the accounts receivable. We conclude that the evidence of record, consisting only of that produced to support plaintiff's motion for summary judgment, is not sufficient as a matter of law to sustain a judgment for Delaware Truck, the moving party, as found by the trial court, or for defendants, the debtor, Delaware Repair, and the individual guarantors, as determined by the Appellate Division.

According to the Appellate Division, Delaware Truck, as the junior creditor, when it came into possession of the accounts receivable by way of the surrender by Delaware Repair, held those receivables only as a trustee or agent on behalf of Royal Bank because the latter had a senior security interest in the receivables. Hence, plaintiff's collection of Delaware Repair's accounts receivable was deemed to be on behalf of Royal Bank, and its subsequent payment of the proceeds from the receivables to the bank satisfied and extinguished Delaware Repair's debt to Royal Bank. With the disappearance of the debt, the security for the debt likewise evanesced.

It is readily inferable that both Delaware Truck and Royal Bank, in the settlement between them, did not intend to satisfy and thereby discharge the underlying obligations of defendants to Royal Bank. Ordinarily, the intention of the parties determines whether a transfer of money by a third person to a creditor constitutes a discharge or purchase of an underlying debt or note. *See Bills and Notes*, 10 *C.J.S.* 451 ("Whether a payment by a stranger was intended in fact to be a payment or a purchase is to be gathered from their acts and declarations and the surrounding circumstances. * * * [I]t is the agreement between the third person [purchaser] and the holder that controls."); *see also Mt. Holly State Bank v. Washington Hotel*, 220 *N.J.Super.* 506, 510, 532 *A.*2d 1125 (App.Div.1987) (recognizing whether giving of note extinguishes old debt depends on intention of the parties); *Payment*, 60

*Am Jur* 2d § 82 ("where a third person pays an obligation of another under agreement with the creditor that it is not to operate as an extinguishment of the debt, it will not have that effect"). This rule may apply to transactions between junior and senior creditors. *E.g., Ottenheimer Publishers v. Regal Publishers,* 626 *S.W.*2d 276 (Tenn.Ct.App.1981) (junior secured creditor did not intend to satisfy underlying debt owed to senior creditor when junior creditor collected debtor's accounts receivable after debtor's insolvency; therefore an assignment to junior creditor of senior's rights against debtor on payment of collected proceeds to senior creditor was not enforceable).

Thus, from the face of the documents evidencing the transaction, it appears that Delaware Truck and Royal Bank mutually intended to transfer, not extinguish, Delaware Repair's underlying debt to Royal Bank. However, regardless of that intent, the Appellate Division may have been correct in concluding that the debt was extinguished as a matter of law. As stated earlier, Royal Bank had priority security interest in Delaware Repair's accounts receivable. That priority interest endured even after plaintiff liquidated the receivables and realized their proceeds. *N.J.S.A.* 12A:9–306(2) (stating that priority of a creditor holding a perfected security interest continues in proceeds from disposition of collateral); *see* discussion, *supra,* at 27–28, 618 *A.*2d at 307. Consequently, in the absence of countervailing considerations, Royal Bank had a right to require plaintiff to disgorge the proceeds of the accounts receivable to the extent of its priority lien interest. *New Hampshire Business Dev. Corp. v. F.R. Lepage Bakery Inc.,* 832 *F.*2d 7 (1st Cir.1987). Therefore, despite the contrary intentions of the parties, we cannot discount the force of the Appellate Division's conclusion that plaintiff was acting as a constructive trustee on Royal Bank's behalf.

The hesitancy that we have in affirming that determination is based on the absence in the record of evidence relating to the circumstances surrounding Royal Bank's claim against Dela-

ware Truck and the settlement of that claim. The record does not sufficiently indicate whether Royal Bank knew, expected, or reasonably anticipated that the accounts receivable would be turned over to Delaware Truck and whether the collections of those receivables would be applied first to Delaware Repair's debt of Delaware Truck. Conversely, the record is silent with respect to Delaware Truck's knowledge or expectations in obtaining the accounts receivable and ignoring Royal Bank's priority when it collected the proceeds of those receivables. The record does not inform us whether Delaware Truck had any claim of right to the accounts receivable sufficient to justify its collection and application of some portion of their proceeds to its debt, or whether it had any valid defenses by way of bar or set-off to Royal Bank's later demand that the collected moneys be paid over.

For example, plaintiff alleges that not all of the moneys collected by it on accounts receivable were in fact moneys subject to the superior claim of Royal Bank. The record indicates that plaintiff was first to file a financing statement with respect to "inventory." When a secured party has a security interest in the debtor's inventory that is covered by a properly-filed financing statement, and the debtor sells the inventory on·open account creating accounts receivable, the creditor automatically retains a perfected security interest in those accounts receivable. *N.J.S.A.* 12A:9–306(3). *See* 2 James J. White & Robert S. Summers, *Uniform Commercial Code,* 346 (3d ed. 1988). Plaintiff arguably was therefore entitled to collect any inventory-generated accounts receivable and apply the proceeds in satisfaction of the debt owed by Delaware Repair. *N.J.S.A.* 12A:9–504(1)(b) and *N.J.S.A.* 12A:9–502.

Because the status of Delaware Truck in collecting the accounts receivable is determinative of its right as assignee to enforce Royal Bank's remedies against the debtors-guarantors, the intentions and expectations of the latter in surrendering the accounts receivable to Delaware Truck may also be relevant.

As noted, Royal Bank sued to recover the loan guaranteed by defendants approximately six months after defendants had surrendered the accounts receivable to Delaware Truck and, presumably, after Delaware Truck had begun to collect the receivables. Delaware Repair and the individual guarantors defaulted in that suit. However, the record is silent with respect to whether defendants took the position, as they do now, that Royal Bank's debt had already been satisfied *via* the surrender of accounts receivable to, and their collection by, Delaware Truck. The defendants' apparent failure to raise that defense, or to claim any set-offs, or to seek to implead Delaware Truck as the holder, constructive trustee, or agent of a fund owed Royal Bank, bear on whether defendants believed Delaware Truck could reduce its own larger claim against defendants without first satisfying the underlying debt of Royal Bank.

An additional circumstance that bears on the understanding and expectation of defendants with respect to whether the disposition of the accounts receivable served to extinguish Royal Bank's debt is the nature and purpose of the guaranty defendants gave Royal Bank and the understanding of defendants in providing that guaranty. The guaranty on its face gives broad rights to Royal Bank. It states that it is "a continuing, absolute and unconditional guaranty" and may be enforced "without first resorting to any security or other property or invoking other available rights or remedies." Thus, under the guaranty Royal Bank had virtually uncontrolled discretion to deal with the collateral, including the right to assign it. *See Lenape State Bank v. Winslow Corp.*, 216 *N.J.Super.* 115, 127–28, 523 *A.*2d 223 (App.Div.1985) (unconditional guaranty grants lender full power, in its uncontrolled discretion and without notice to debtor, to deal in any manner with debtor's liabilities and collateral). Arguably, those rights included the right to foreclose on the guarantors' mortgage and forego its other security interests. *N.J.S.A.* 12A:9–501(4); *see also Lenape State Bank, supra,* 216 *N.J.Super.* at 130, 523

*A.*2d 223 (secured party can either proceed against personal property under U.C.C. and real property pursuant to New Jersey real-property law or proceed against both real and personal property under New Jersey real-property law). Thus, on Delaware Repair's default, Royal Bank was free to seek recourse directly against the guarantors and to enforce any of its security interests to satisfy its debt. *Id.* at 126, 523 *A.*2d 223 (unconditional guaranty permits creditor to move against guarantor without first acting against either collateral or principal debtor).

Moreover, under the doctrine of marshalling assets in an action against defendants, Royal Bank might have had an obligation under the personal guaranties to proceed against the real-estate mortgage in order to enable plaintiff to achieve a recovery out of the accounts receivable. *See Meyer v. United States,* 375 *U.S.* 233, 84 *S.Ct.* 318, 11 *L.Ed.*2d 293 (1963) (recognizing that court may compel senior creditor who can elect to satisfy claim from one of two available funds belonging to debtor to resort first to the fund unavailable to junior creditor). Hence, in the context of this case, it would also be relevant to determine whether the guarantors, the Wilsons, when signing the guaranty and mortgage, knew or should have known that the bank could, in effect, forego its priority in the receivables, or, indeed, whether in the face of the Wilsons' imminent or actual bankruptcy, the bank would be required or expected to defer to Delaware Truck as the junior creditor with respect to the accounts receivable. Despite the broad range of remedial rights under the guaranty, the record is devoid of any evidence that would tend to show that Royal Bank reasonably would have pursued any particular remedy under the guaranty to the exclusion of another, or whether in its settlement with Delaware Truck it intended to select among the remedies provided by the guaranty.

▮ Finally, it seems clear that defendants' claim that the personal guaranties were discharged because the collateral held

by Royal Bank had been impaired through its liquidation is not sustainable. Guarantors may waive their rights to claim impairment of collateral as a defense in the guaranty agreement. Such a waiver, however, must be unequivocal before it will effectively preclude a guarantor from asserting the defense. *Langeveld v. L.R.Z.H. Corporation*, 74 *N.J.* 45, 376 *A.*2d 931 (1977).

These several considerations appear material to whether plaintiff, Delaware Truck, improperly enhanced its position by paying itself $98,000 due Royal Bank and later by taking an assignment of the subject mortgage; and whether Royal Bank, though well within its rights to assign its default judgment and security interests, including defendants' personal guaranty secured by their residential mortgage, merely received a sum that was equivalent to the amount of the bank's judgment against defendants. Additional evidence should inform the determination of whether plaintiff and Royal Bank entered into a valid settlement permitting plaintiff to foreclose on defendants' residence.

### III

We do not purport to resolve any of the factual issues that appear germane to proper determination of the claims in this case, or to intimate the weight, if any, to be ascribed to any facts that are found. While we cannot on this record indicate that any particular determination of these issues would dictate a resolution in favor of either party, the relevance of these issues forestalls a motion for summary judgment based on the current record.

In conclusion, we reverse the judgment of the Appellate Division, and remand this matter to the trial court for further proceedings consistent with this opinion.

POLLOCK, J., concurring.

I concur in the judgment of remand, and write separately with the hope of providing further guidance to the trial court.

My concern is that without further explanation, the court might misconstrue the rights and duties of the parties and reach a result that is both contrary to law and inequitable. That possibility involves more than theoretical nuances. At stake is the home of defendants Edward L. Wilson and Joan Wilson, his wife (the Wilsons).

This appeal arises from the motion of plaintiff, Delaware Truck Sales, Inc. (Delaware Truck), for summary judgment to foreclose a mortgage given by the Wilsons to secure their guaranty of a promissory note executed by Mr. Wilson's corporation, Delaware Repair Services, Inc. (Delaware Repair), in favor of Royal Bank of Pennsylvania (Royal Bank or bank). Although the record is sparse, the following facts emerge. Edward Wilson formerly worked for Delaware Truck, which was in the business of repairing cargo containers. Together with another former employee, he incorporated Delaware Repair to purchase the assets of Delaware Truck. Mr. Wilson arranged on August 20, 1984, with Royal Bank for a $75,000 line of credit evidenced by a promissory note signed by Delaware Repair. To secure the loan, Delaware Repair executed a financing statement covering various assets, including inventory and accounts receivable. Royal Bank filed the financing statement with the Camden County Clerk on September 19, 1984, and with the Secretary of State on September 25, 1984. As further security, the Wilsons executed a personal guaranty, secured by the subject mortgage on their residence, which Mrs. Wilson had inherited from her mother.

In the interim, on September 6, 1984, Delaware Repair signed a contract to purchase the assets of Delaware Truck. The purchase price of $300,000 was paid by a $270,000 promissory note and a $30,000 cash payment. Mr. Wilson and the co-employee guaranteed payment of the note. Mrs. Wilson, however, assumed no personal liability to Delaware Truck. Nor did the Wilsons execute a mortgage on their home in favor of Delaware Truck. The agreement contemplated that Delaware Repair would execute "financing statements" that would in-

clude a "secondary lien" on Delaware Repair's accounts receivable, "subject only to a prior lien in favor of Purchaser's institutional lender." On October 4, 1984, fifteen days after Royal Bank had filed financing statements covering Delaware Repair's receivables, Delaware Truck filed a financing statement covering those receivables. Thus, as the majority finds, "Royal Bank's priority interest in the accounts receivable of Delaware Repair was superior to the security interest of plaintiff." *Ante* at 28, 618 *A.*2d at 307. That finding, in my opinion, governs the rights and duties of the parties and controls the outcome of this case.

Like the Appellate Division and the majority, I believe that Royal Bank had a senior lien on non-inventory-generated accounts receivable. I disagree, however, with the majority's statement that Delaware Truck "arguably was * * * entitled to collect any inventory-generated accounts receivable and apply the proceeds in satisfaction of the debt owed [to it] by Delaware Repair." *Ante* at 31, 618 *A.*2d at 309. I do not dwell on this disagreement because, as the Appellate Division found, the inventory "sounds like a minor incidental part of the business and its proceeds." Thus, even if Delaware Truck had a valid lien on proceeds traceable to inventory, it was obligated to surrender the bulk of the proceeds to Royal Bank because the bank's lien covered most, if not all, of the proceeds.

Delaware Repair defaulted on its payments to Delaware Truck and Royal Bank. On May 27, 1988, Delaware Repair signed a "Surrender Agreement" with Delaware Truck, in which Delaware Repair acknowledged that it owed $166,935.58, and surrendered to Delaware Truck all assets in which Delaware Truck held a security interest, including inventory and accounts receivable of $140,000. Without notifying Royal Bank, Delaware Truck collected $98,600 on those receivables. Notwithstanding Royal Bank's prior security interest, Delaware Truck applied the proceeds to reduce the debt secured by its subordinate security interest in the accounts receivable.

In December 1988, Royal Bank obtained a default judgment against Delaware Repair and the Wilsons for $62,000—$36,600 less than the amount recovered by Delaware Truck on Delaware Repair's receivables. If Delaware Truck had honored Royal Bank's senior security interest, the Wilsons' debt to the bank would have been satisfied and Royal Bank would have cancelled both their guaranty and their mortgage, with the result that it would not have obtained its judgment against them.

On learning that Delaware Truck had applied the proceeds to reduce the amount owed on its note rather than that of Royal Bank, the bank threatened to sue Delaware Truck. The two creditors settled their dispute, apparently without the knowledge or consent of the Wilsons.

Under the settlement, Delaware Truck paid Royal Bank $59,-500, only $2,500 less than the amount of the bank's judgment against defendants. The record does not indicate whether the $59,500 derived from the $98,600 that Delaware Truck had misappropriated from the proceeds of Delaware Repair's receivables. If so, that would compound the wrongfulness of Delaware Truck's misuse of the proceeds. In exchange for the $59,500, Royal Bank assigned its judgment to Delaware Truck, together with the Wilsons' personal guaranty secured by the mortgage on their home. Royal Bank signed a subordination agreement prepared by Delaware Truck's attorney, in which Royal Bank acknowledged that "every security interest held by Royal Bank in each and every asset of Delaware Repair Services, Inc. is subordinate to the security interest of Delaware Truck."

To the extent that the agreement indicates that Royal Bank's security interest in Delaware Repair's accounts receivable was subordinate to that of Delaware Truck, the agreement, as the majority implicitly recognizes, is incorrect. If the purpose of the provision was to reflect Royal Bank's intent to subordinate its security interest, that provision should not bind the Wilsons.

Under the agreement, Royal Bank's loan was satisfied; the bank would not care if its security interest was subordinate to that of Delaware Truck. The two creditors could not bargain away the debtors' expectation that the bank loan, which was secured by the subject mortgage, would be satisfied from the proceeds of accounts receivable in favor of their obligation to Delaware Truck.

The majority correctly concludes that notwithstanding the "intentions of the parties, we cannot discount the force of the Appellate Division's conclusion that [Delaware Truck] was acting as a constructive trustee on Royal Bank's behalf." *Ante* at 30, 618 *A.*2d at 308. In support of that conclusion, the majority relies on the silence of the record concerning the knowledge or expectations of the two creditors. Also relevant, as the majority acknowledges, *ante* at 31, 618 *A.*2d at 308–09, are the guarantors' expectations. If the Wilsons had agreed with Royal Bank that the bank enjoyed a senior security interest in the proceeds, the two creditors by themselves could not defeat that expectation.

A fair reading of the record suggests that by applying the proceeds of the receivables to its own claim, Delaware Truck deprived Royal Bank of money to which it was entitled, forced the bank to threaten suit, and then resolved the dispute by paying the bank virtually all the money due on the bank's loan. Thus, Delaware Truck enhanced its position, first by paying itself $98,600 due Royal Bank and later by taking an assignment of the subject mortgage. If Delaware Truck had paid the bank $62,000 from the proceeds of the receivables, the bank's loan would have been satisfied and Royal Bank would have cancelled the mortgage. By misappropriating the proceeds of the receivables, Delaware Truck prevented the payment of Royal Bank's loan and facilitated the assignment of the subject mortgage, all to its benefit and the Wilsons' detriment. Having brought the bank to the bargaining table by not honoring the bank's senior security interest in the receivables, Delaware Truck improved its position to the prejudice of the Wilsons.

Until it acquired Mrs. Wilson's guaranty and the subject mort-gage, Delaware Truck had no claim against her or her family home. If it had paid Royal Bank from the proceeds of the receivables, Delaware Truck never would have acquired the mortgage from the bank. Only by misusing the proceeds was Delaware Truck able to acquire the mortgage that it now seeks to foreclose.

In April 1989, Delaware Truck sued Delaware Repair and the Wilsons on both the note signed by Delaware Repair in favor of Delaware Truck and on Royal Bank's judgment. That action apparently drove Edward Wilson into bankruptcy and induced Delaware Truck to bring the present action to foreclose on the Wilsons' home.

Throughout these proceedings, the cornerstone of Delaware Truck's position has been its claim that it was entitled to the proceeds of the accounts receivable because its security interest was senior to that of Royal Bank. The trial court accepted that claim, but both the Appellate Division and this Court have correctly rejected it.

The trial court also adopted Delaware Truck's alternative argument that through the subordination agreement and as-signments from Royal Bank, Delaware Truck had obtained a senior security interest in the receivables. In adopting that argument, the court relied on the Wilsons' guaranty, which stated that it could be enforced "without first resorting to any security or other property or invoking other available rights or remedy."

The Appellate Division, however, concluded that because Delaware Repair should have applied the proceeds to Royal Bank's debt, that debt should be deemed satisfied. It relied on *N.J.S.A.* 12A:9–312(5), which grants priority to the first creditor to perfect a security interest by filing. The court reasoned that Delaware Truck should have honored Royal Bank's senior secu-rity interest and paid the amount needed to satisfy the Wilsons' debt to the bank. Like the bank, the Wilsons had a right to

expect that Delaware Truck would pay the bank before paying itself. Only by violating its duty under the Uniform Commercial Code was Delaware Truck able to bring the bank to the bargaining table and obtain the bank's consent to the agreement. From Royal Bank's perspective, once its loan was satisfied, it had no financial interest in the legal relationship between Delaware Truck and the Wilsons. Neither Delaware Truck nor Royal Bank inquired whether their agreement defeated the Wilsons' expectations.

The majority finds "readily inferable that both Delaware Truck and Royal Bank, in the settlement between them, did not intend to satisfy and thereby discharge the underlying obligations of defendants to Royal Bank." *Ante* at 29, 618 *A.*2d at 308. The record may support, but hardly compels such a finding. Hence, I would not leap to the conclusion that "from the face of the documents evidencing the transaction, it appears that Delaware Truck and Royal Bank mutually intended to transfer, not extinguish, Delaware Repair's underlying debt to Royal Bank." *Id.* at 30, 618 *A.*2d at 308. My difference with the majority ordinarily might not amount to anything more than a quibble. Here, the difference requires further explanation.

I agree with the Appellate Division that the Wilsons' debt to Delaware Truck was extinguished as a matter of law. The majority, however, goes no further than to concede that "the Appellate Division may have been correct in concluding that the debt was extinguished as a matter of law." *Id.* at 30, 618 *A.*2d at 308. That equivocation reflects a misperception of the relationship between the Wilsons and Royal Bank and of that between Royal Bank and Delaware Truck. The misperception causes the majority's "hesitancy * * * in affirming [the judgment of the Appellate Division] based on the absence in the record of evidence relating to the circumstances surrounding Royal Bank's claim against Delaware Truck and the settlement of that claim." *Ibid.*

More important than the relationship between Royal Bank and Delaware Truck, I believe, is that between the bank and the Wilsons. Like the bank, the Wilsons, as guarantors of Delaware Repair's debt to Royal Bank, had the right to expect that Delaware Truck would respect the seniority of the bank's security interest. Delaware Truck and Royal Bank could not deprive the Wilsons of that right without the Wilsons' consent. *See Ottenheimer Publishers v. Regal Publishers*, 626 *S.W.*2d 276, 280 (Tenn.App.1981) (stating that debtor "does at least have the right to have the collateral disposed of in a manner which will satisfy the debt for which it was offered as security"). Hence, I disagree with the majority's suggestion that the Wilsons' expectations may be relevant because "the status of Delaware Truck in collecting the accounts receivable is determinative of its right as assignee to enforce Royal Bank's remedies against the debtors-guarantors * * *." *Ante* at 31–32, 618 *A.*2d at 309. The Wilsons' expectations are relevant not because Delaware Truck's status is determinative, but because their expectations limit the extent to which Royal Bank and Delaware Truck may deal with the proceeds of Delaware Repair's receivables.

Similar reasoning leads me to conclude that the majority has unduly emphasized the position taken by the Wilsons in the action by Royal Bank. The Wilsons' rights should be determined by their original agreement with the bank, rather than by their position in subsequent litigation. Any failure of the Wilsons to contest vigorously Royal Bank's claim need not reflect their belief that "Delaware Truck could reduce its own larger claim against defendants without first satisfying the underlying debt of Royal Bank." *Ante* at 32, 618 *A.*2d at 309.

I also believe that the majority misperceives the significance of the Wilsons' guaranty. By its terms, the guaranty was absolute, unconditional, and assignable. Under the circumstances of this case, however, Delaware Truck should not be allowed to avail itself of the guaranty or of its self-serving

agreement with Royal Bank, an agreement that apparently was drafted by Delaware Truck's attorney without the knowledge or consent of the Wilsons. The reason is that the guaranty is subject to the Wilsons' expectation that Delaware Truck would pay Royal Bank from the proceeds of the receivables. Thus, the point is not that "Royal Bank might have had an obligation under the personal guaranties to proceed against the real-estate mortgage in order to enable plaintiff to achieve a recovery out of the accounts receivable." *Ante* at 33, 618 *A.*2d at 310. Rather, the point is that Delaware Truck and Royal Bank's agreement alone could not deprive the Wilsons of their rights, notwithstanding the terms of the guaranty. A contrary result could lead to a circuity of action: the Wilsons could recover from Royal Bank for its failure to apply the proceeds to the loan secured by their guaranty, and the bank could then recover from Delaware Truck for the misapplication of the proceeds.

Royal Bank recognized that its primary obligor was Delaware Truck. On discovering that Delaware Repair had misapplied the accounts receivable, the bank did not seek to foreclose on the Wilsons' home, but threatened to sue Delaware Truck. Had the Wilsons paid Royal Bank under their guaranty of Delaware Repair's loan, they would have been subrogated to the bank's rights against Delaware Truck for misappropriation of the proceeds of the receivables. *See Langeveld v. L.R.Z.H. Corp.*, 74 *N.J.* 45, 51, 376 *A.*2d 931 (1977) ("Upon paying the debt, the surety is, as a matter of law, subrogated to all the creditor's rights against the principal debtor and is entitled to all benefits derivable from any security of the principal debtor that may be in the creditor's hands."); *see also Ottenheimer Publishers, supra,* 626 *S.W.*2d at 281 ("Generally, a surety or guarantor, by payment of the debt of his principal * * * acquires an immediate right to be subrogated * * * to all rights, remedies and securities which were available to the creditor * * *."). In effect, the parties would have landed in their present position with the Wilsons entitled to credit against Delaware Truck for the misuse of the proceeds of Delaware

Repair's receivables. Thus, I believe the majority goes too far in stating that "it seems clear that defendants' claim that the personal guaranties were discharged because the collateral held by Royal Bank had been impaired through its liquidation is not sustainable." *Ante* at 34, 618 *A.*2d at 310. For, as we have held, "The rule forbidding impairment of collateral has as its chief aim the protection of [the] potential benefits made available through subrogation." *Langeveld, supra,* 74 *N.J.* at 51, 376 *A.*2d 931.

The majority should not rely on the possibility that Royal Bank may have had an equitable obligation to marshall its assets in favor of Delaware Truck. As previously indicated, the critical relationship is not that between Royal Bank and Delaware Truck, except insofar as *N.J.S.A.* 12A:9-312(5) obligates Delaware Truck to honor the bank's senior security interest. The focus should be on the relationship between Delaware Truck and the Wilsons.

*N.J.S.A.* 12A:9-504 generally authorizes creditors to dispose of collateral to satisfy a defaulted loan. An earlier section, *N.J.S.A.* 12A:9-306(2), provides that a security interest continues in the proceeds from the disposition of collateral. No one disputes that the security interest of a creditor continues in the proceeds from the collection of accounts receivable. *N.J.S.A.* 12A:9-306, comments 2 & 3; 9 Ronald A. Anderson, *U.C.C.* § 9-306:11, at 142 (1985); 9 William D. Hawkland, *Uniform Commercial Code Series* § 9-306:03 (1986). The priority of a creditor with a perfected security interest in the receivables continues in the proceeds. 3 Theodore Eisenberg, *Debtor–Creditor Law* ¶ 15.05[B], at 15-85 (1989). A creditor with a security interest in accounts receivable need not take possession of the receivables to perfect its lien. *Id.* at 15-89. A secured creditor who disposes of proceeds in violation of article 9 "is liable to the debtor and other secured parties for any loss caused by his failure to comply." *Id.* ¶ 15.09[H], at 15-149.

I do not read Professors White and Summers's text to the contrary. In their text, they state that they do not believe that a senior secured party "may seek to assert a prior claim to the proceeds of the sale conducted by the junior secured party." 2 James J. White & Robert S. Summers, *U.C.C.* § 27–9, at 593 (3d ed. 1988). That statement appears in a discussion of the relative rights of creditors in the context of a foreclosure sale of collateral under section 9–504(4) of the Uniform Commercial Code, adopted in New Jersey as *N.J.S.A.* 12A:9–504(4). Their criticism is that if the senior creditor "wants such priority, he should have to run the foreclosure sale. And if he does not, his interest is protected anyway." 2 White & Summers, *supra,* § 27–9, at 593. Taken in context, that statement should not apply to the collection of accounts receivable by a junior creditor in possession.

The First Circuit reached the same result in a similar case, *New Hampshire Business Development Corp. v. F.R. Lepage Bakery,* 832 *F.*2d 7 (1987). There, New Hampshire Business Development Corp. (NHBDC) had a $50,000 senior security interest in accounts receivable of one Cross. F.R. Lepage Bakery (Lepage) held a junior security interest in the same receivables. Lepage collected the proceeds of the receivables. The issue was whether Lepage was obliged to account to NHBDC to the extent of its $50,000 security interest. The court ruled that

> [t]he rights of the secured parties in the collateral after a debtor's default are the essence of a security transaction. It is the relationship between a senior secured creditor and a junior secured creditor that defines their obligations. Although not extensive, the case law indicates that it is the obligation of the junior creditor to account for and pay over to the senior creditor the sums collected.
>
> [*Id.* at 10 (citations omitted).]

I agree.

The court also found that

> [t]he relationship of the parties and the circumstances of the case also give rise to the remedial device of a constructive trust. The junior creditor (Lepage) holds the right to payment from the common debtor (Cross) as a constructive

trustee for the senior creditor (NHBDC) after the default of the common debtor.

[*Id.* at 11 (citations omitted).]

That case involved the imposition of a constructive trust on a junior creditor in favor of a senior creditor. The present matter concerns the relationship between a misappropriating junior creditor and the debtor and the debtor's guarantors, but the distinction should not make any difference.

"[A] constructive trust, unlike an express trust, is a remedial and not a substantive institution." Austin W. Scott, *Constructive Trusts,* 71 *L.Q.Rev.* 39, 41 (1955) (citing Roscoe Pound, *The Progress of the Law—Equity,* 33 *Harv.L.Rev.* 420, 421 (1920)). In *Beatty v. Guggenheim Exploration Co.,* 225 *N.Y.* 380, 122 *N.E.* 378, 380 (1919), Judge Cardozo defined a constructive trust as "the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *See also Restatement of the Law of Restitution* § 160 (1937); 5 Austin W. Scott & William F. Fratcher, *The Law of Trusts* § 452, at 304 (4th ed. 1989) ("A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it."); 4A Richard R. Powell, *The Law of Real Property* § 594, at 48–3 to –4 (same); 4 John N. Pomeroy, *Equity Jurisprudence* § 1044, at 93 (1941) ("They arise when the legal title to property is sustained by a person in violation, express or implied, of some duty owed to the one who is equitably entitled, and when the property thus obtained is held in hostility to his beneficial rights of ownership."); *accord D'Ippolito v. Castoro,* 51 *N.J.* 584, 588–89, 242 *A.*2d 617 (1968); *Stewart v. Harris Structural Steel Co., Inc.,* 198 *N.J.Super.* 255, 265–66, 486 *A.*2d 1265 (App.Div.1984); *Massa v. Laing,* 160 *N.J.Super.* 443, 446, 390 *A.*2d 624 (App.Div.1977), *aff'd o.b.,* 77 *N.J.* 227, 390 *A.*2d 547 (1978); *Callahan v. Callahan,* 142 *N.J.Super.* 325,

329, 361 *A.*2d 561 (App.Div.1976); *Hirsch v. Travelers Ins. Co.,* 134 *N.J.Super.* 466, 470, 341 *A.*2d 691 (App.Div.1975).

By not turning over the proceeds to Royal Bank, Delaware Truck unjustly enriched itself and became a constructive trustee for the benefit of the Wilsons. *See* 5 Scott & Fratcher, *supra,* § 462.2, at 313–14 (stating that unjust enrichment may arise out of wrongful acquisition or retention of property). The subordination agreement between Delaware Truck and Royal Bank is irrelevant; the constructive trust arises to prevent the unjust enrichment of Delaware Truck at the expense of the Wilsons. *See id.* § 462, at 311. Royal Bank was entitled to an equitable lien on the proceeds. 4 Scott & Fratcher, *supra,* § 291.4, at 82; *id.* § 508.2, at 569.

On remand, I believe the trial court should focus on the Wilsons' right to expect Delaware Trust to turn over the proceeds to Royal Bank for application against Delaware Repair's $75,000 bank loan, which was secured by the subject mortgage.

POLLOCK and STEIN, JJ., concurring in the result.

*For reversal and remandment*—Chief Justice WILENTZ, and CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance*—None.